[No. A066357. First Dist., Div. Three. Nov. 23, 1994.]

EDWARD CHARLES SYKES, Petitioner, v.
THE SUPERIOR COURT OF THE CITY AND COUNTY OF SAN
FRANCISCO, Respondent;
THE PEOPLE, Real Party in Interest.

**COUNSEL**

Jeff Brown, Public Defender, Peter G. Keane, Chief Deputy Public Defender, Katherine Asada and Henry Doering III, Deputy Public Defenders, for Petitioner.

No appearance for Respondent.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Ann K. Jensen, Gerald A. Engler and John H. Deist, Deputy Attorneys General, for Real Party in Interest.

**OPINION**

**MERRILL, J.**—Edward Charles Sykes, accused of burglarizing a music store and robbing a security guard, seeks dismissal of the robbery charge and other allegations. "Robbery is the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear." (Pen. Code,

§ 211.)[1] ■■■ The issue we address is whether a saxophone was taken "from the person or immediate presence" of a security guard who chased Sykes after Sykes left the burglarized building with the saxophone. The People contend the guard, who was not employed by the burglarized store, constructively possessed the saxophone because he sought to retrieve it on the owner's behalf and Sykes momentarily dropped it during the chase and then picked it up. We find no basis for the robbery charge. We direct issuance of a writ of prohibition to restrain further prosecution on the charge. We deny the petition in other respects.

Two security guards employed by the business across the street from the burglarized premises testified against Sykes at the preliminary examination. Lewis Cobb stated that he observed Sykes break through the music store door and enter the building, then saw him leave the building with an object. Damon Hensley, Cobb's relief, saw Sykes carrying a saxophone through the door. He crossed the street to investigate and told Sykes to "halt." At first Sykes approached Hensley, holding out the saxophone. Hensley drew his revolver and ordered Sykes to stop. Sykes turned and ran. Hensley eventually caught Sykes and retrieved the saxophone. During a struggle Sykes bit or scraped Hensley's hand, necessitating medical attention and leaving a small scar.

At one point Sykes held the saxophone to his side like he was drawing it back to swing at Hensley. During the chase, Sykes fell several times. Although Hensley's testimony was unclear on this point, Sykes may have dropped the saxophone and picked it up again during the chase.

An information filed in San Francisco County Superior Court charged Sykes with burglary of the Woodwind and Brass Workshop; robbery of the property of Edwin Burger (the store owner) from the person, possession and immediate presence of the security guard; assault with force upon the security guard; and several prior convictions. Sykes moved to dismiss all charges except the burglary charge (§ 995). After hearing, the court denied the motion. This petition followed (§ 999a).

Sykes contends he did not rob security guard Hensley because he did not take the saxophone from Hensley's actual or constructive possession. He acknowledges a defendant may be convicted of robbing a janitor or night watchman by taking property owned by the employer of the janitor or night watchman. He argues, however, that this principle does not apply to a security guard for the building across the street, who had no interest in the saxophone.

[1]All further statutory references are to the Penal Code.

Relying upon *People* v. *Moore* (1970) 4 Cal.App.3d 668 [84 Cal.Rptr. 771], *People* v. *Gordon* (1982) 136 Cal.App.3d 519 [186 Cal.Rptr. 373], and *People* v. *Estes* (1983) 147 Cal.App.3d 23 [194 Cal.Rptr. 909], the People contend that when Sykes dropped the saxophone, constructive possession passed from Sykes to Hensley, who was acting on behalf of the saxophone's owner. Because Sykes later picked up the saxophone and threatened to use force to retain it, Sykes robbed Hensley.

In *People* v. *Moore, supra,* 4 Cal.App.3d 668, defendant entered a business establishment tended by two young girls. He produced a gun and demanded "the money." He fired a shot into the wall to demonstrate his seriousness. Mrs. Hall, the mother of one of the girls, then entered and, at defendant's insistence, removed money from the cash register and from a money bag and gave it to the defendant. Defendant then herded the three into a back room and locked them in. On appeal, defendant argued the business establishment was the victim, not Mrs. Hall, a mere visitor, and that the evidence did not support a count of robbing Mrs. Hall.

The court rejected the contention, stating: "It is no defense to a charge of robbery (or of theft) that the victim was not the true owner of the property taken. Theft can be committed against one who was himself a thief. [Citations.] It follows that, once Mrs. Hall exercised dominion over the money, whatever her motivation in so doing, she became, insofar as defendant was concerned, the person in possession thereof, and she was properly designated in the information as the immediate victim of his robbery." (4 Cal.App.3d at pp. 670-671.)

In *People* v. *Gordon, supra,* 136 Cal.App.3d 519, two robbers entered the home of Mr. and Mrs. Lopes, pulled a gun, and bound the Lopeses. They then took $1,000, some marijuana and a shoulder bag from the bedroom of the Lopeses' son, Anthony. The *Gordon* court considered whether the property was in the possession of Mr. and Mrs. Lopes and was taken from their immediate presence, holding that "possession" meant custody and that the evidence was sufficient. "The only evidence in the record to support a finding of possession is the fact Mr. and Mrs. Lopes owned and lived in the residence. The jury determined the parents possessed these personal items of their adult son for purposes of the robbery statute and were therefore appropriately designated as victims of the robbery. Clearly, if those individuals enumerated in the paragraph above were responsible for the protection and preservation of the property entrusted to them, parents have at least the same responsibility to protect goods belonging to their son who resides with them in their home. We hold there is substantial evidence to uphold this determination." (*Id.,* at p. 529.)

In mentioning "individuals enumerated in the paragraph above," the court was referring to decisions finding the following people to be victims of robbery: (1) a purchasing agent in charge of payroll, (2) store clerks, (3) a barmaid, (4) janitors in sole occupation of premises, (5) watchmen, and (6) gas station attendants. (*People* v. *Gordon, supra,* 136 Cal.App.3d at p. 529.)

In *People* v. *Estes, supra,* 147 Cal.App.3d 23, a security guard at a Sears store observed the defendant putting on clothing and leaving without paying. The guard confronted defendant after he left the store. When the guard attempted to detain defendant, defendant pulled a knife, swung it at the guard, and threatened to kill him. Defendant contended property was not taken from the person of the guard because the security guard did not have authority or control over the property. *Estes* rejected the contention, stating: "It is not necessary that the victim of the robbery also be the owner of the goods taken. Robbery is an offense against the person who has either actual or constructive possession over the goods. (*People* v. *Gordon*[, *supra,*] 136 Cal.App.3d 519, 528-529.) Thus, a store employee may be a victim of robbery even though he does not own the property taken and is not in charge or in immediate control of the property at the time of the crime. [Citations.] Nor is it a defense that the victim was a visitor to a store and was not the true owner of money or property taken. [Citation.] Furthermore, a person may be convicted of robbing a janitor or night watchman by taking the employer's property. [Citations.]

" . . . . . . . . . . . . . . . . . . . . . . . . . . .

"The victim was employed by Sears to prevent thefts of merchandise. As the agent of the owner and a person directly responsible for the security of the items, Tatem was in constructive possession of the merchandise to the same degree as a salesperson. [Citations.] Because there were other people present in the store who also had constructive possession of the personal property is not dispositive, since more than one person may constructively possess personal property at the same time and be a victim of the same offender. [Citation.]

"Defendant further alleges that the merchandise was not taken from the 'immediate presence' of the security guard. The evidence establishes that appellant forceably resisted the security guard's efforts to retake the property and used that force to remove the items from the guard's immediate presence. By preventing the guard from regaining control over the merchandise, defendant is held to have taken the property as if the guard had actual possession of the goods in the first instance. [Citation.]" (147 Cal.App.3d at pp. 26-27.)

Each of these decisions is distinguishable. Although he ordered Sykes to drop the saxophone, Hensley never actually possessed it; he never exercised dominion over the object by handling it, as Mrs. Hall had done in *Moore*. Unlike the Lopeses in *Gordon*, Hensley did not own the premises and had no special obligation to protect the goods of Woodwind and Brass. Nor did Hensley constructively possess the saxophone, because he was not an employee of the owner, as was the Sears guard in *Estes*.

We reject the People's contention that when Sykes dropped the saxophone, if he did, constructive possession passed to Hensley, who was acting on Woodwind and Brass's behalf. Constructive possession depends upon a special relationship with the owner of the property, not upon the motives of a person seeking to recover possession from a thief or burglar. The fact Hensley was employed as a guard for another business did not make him an agent of Woodwind and Brass. His relationship to Woodwind and Brass was that of a neighbor and good citizen seeking to catch a criminal. Moreover, possession did not pass from Sykes to another merely because he may have momentarily dropped the saxophone. The People's contention that momentarily dropping the saxophone would trigger a change of possession merely underscores the weakness of their argument that Hensley, by intending to recover it for its owner, could constructively possess Woodwind and Brass's saxophone.

We conclude the superior court erred in denying Sykes's motion to dismiss the robbery charge. Let a peremptory writ of prohibition issue restraining the San Francisco County Superior Court from taking any further action on the charge, other than to dismiss it. In all other respects, the petition for writ of prohibition is denied. The stay issued by this court will dissolve by its own terms when this decision becomes final.

White, P. J., and Chin, J., concurred.

A petition for a rehearing was denied December 21, 1994, and the petition of real party in interest for review by the Supreme Court was denied March 16, 1995.