[No. G013678. Fourth Dist., Div. Three. Dec. 16, 1994.]

THE PEOPLE, Plaintiff and Respondent, v.
EDWARD GALOIA, Defendant and Appellant.

## COUNSEL

Brian A. Wright, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Janelle B. Davis and Nancy Palmieri, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**SONENSHINE, J.**—In this appeal, Edward Galoia (1) mounts numerous challenges to his second degree robbery conviction, (2) attacks the constitutionality of a prior serious felony conviction, (3) alleges a procedural sentencing error, and (4) contends CALJIC No. 2.90 violates due process. We find no robbery occurred and reverse.

### I

Early one evening, Galoia entered a convenience store and retrieved a 12-pack of beer from a cooler. He then selected a candy bar from the front of the store and put the items on the checkout counter. As the cashier was

ringing up the goods, Galoia grabbed some cigarettes and left the store with the beer and candy.

Mark Steadman was in the store at the time collecting money from the video games he has there. He chased Galoia outside and asked him to stop. Galoia turned around and told Steadman he was going to "kick his ass." Steadman said "come on" and was then hit from behind by Galoia's companion, Duhamel. At that point, Steadman retreated and Galoia and Duhamel left with the beer.

Galoia testified he was drunk and unaware Duhamel intended to strike Steadman.

## II

■ Galoia describes Steadman as a "Good Samaritan" who lacked a sufficient interest in the property taken to be a robbery victim. The Attorney General disagrees, claiming Steadman was acting as an agent of the store and had a derivative stake in the goods. On this dispositive issue, we find for Galoia.

"Robbery is the felonious taking of personal property in the possession of another, from his [or her] person or immediate presence, and against his [or her] will, accomplished by means of force or fear." (Pen. Code, § 211.) The victim's possession of the property may be either actual or constructive and it need not be exclusive. (*People* v. *Miller* (1977) 18 Cal.3d 873, 880-881 [135 Cal.Rptr. 654, 558 P.2d 552].) Nor must the victim own the property, so long as he or she exercises actual control over it. (*People* v. *Moore* (1970) 4 Cal.App.3d 668, 670 [84 Cal.Rptr. 771] [physical dominion over money sufficient].)

For example, in *People* v. *Estes* (1983) 147 Cal.App.3d 23 [194 Cal.Rptr. 909], the defendant's robbery conviction was upheld where he used a knife to prevent a Sears security guard from retaking store property. The defendant argued the guard lacked sufficient authority or control over the loot, but the court disagreed: "The victim was employed by Sears to prevent thefts of merchandise. As the agent of the owner and a person directly responsible for the security of the items, [the guard] was in constructive possession of the merchandise to the same degree as a salesperson. [Citation.]" (*Id.* at p. 27.)

Unlike the guard in *Estes*, Steadman was not an employee or agent of the convenience store. Nor was he in any way responsible for the security of the items taken. Yet, the Attorney General maintains Steadman was acting under

the "implicit authorization" of the store when he pursued Galoia. The state relies on the fact a store worker followed Steadman outside and yelled for help after Steadman was hit. However, no one from the store instructed Steadman to give chase, and there is no evidence Steadman was motivated by anything other than good citizenship. Under these circumstances, we must reject the state's "implicit authorization" argument. (Cf. *People* v. *Gordon* (1982) 136 Cal.App.3d 519, 529 [186 Cal.Rptr. 373] [parents proper robbery victims of son's property given their responsibility to protect goods].)

The Attorney General's backup argument fares no better. It goes like this: "Mr. Steadman[] owned and operated video game machines at the store. He derived income from the store customers and likewise [the store] derived income from his machines. Much like an employee, Mr. Steadman had an interest in the property, his livelihood from the games was codependent upon the continued success and prosperity of the store. . . . [Therefore,] Steadman . . . had a legitimate interest in the property as a pseudo-employee and co-beneficiary of the monies earned by his [machines] . . . ."

However, just because Steadman and the store mutually benefited from the video machines does not mean Steadman had a legally recognized interest in or right to control store property. His relationship to the store was far more attenuated than persons recognized by the law as potential robbery victims, such as bailees, servants, cashiers, store managers, clerks, watch persons, janitors, bartenders and station attendants. (See *People* v. *Gordon*, *supra*, 136 Cal.App.3d at p. 529; 4 Wharton's Criminal Law (14th ed. 1981) § 482, pp. 75-76.) Steadman was simply caught up in the events of the moment when Galoia stole the beer. (Cf. *People* v. *Miller*, *supra*, 18 Cal.3d at p. 881, fn. 5.) As the recent case of *Sykes* v. *Superior Court* (1994) 30 Cal.App.4th 479 [35 Cal.Rptr.2d 571] illustrates, Steadman did not have a sufficient interest in the property to be a robbery victim.

Sykes stole a saxophone from one business and was chased and apprehended by a security guard working for another business. The issue was whether the guard had a sufficient interest in the saxophone to make him a robbery victim. The state argued the guard constructively possessed the sax because he sought to retrieve it on the owner's behalf and Sykes momentarily dropped the instrument during the chase. However, the court was not persuaded: "Although he ordered Sykes to drop the saxophone, [the guard] never actually possessed it; he never exercised dominion over the object by handling it[.] . . . [The guard] did not own the premises and had no special obligation to protect the goods[.] . . . Nor did [the guard] constructively possess the saxophone, because he was not an employee of the owner, as

was the Sears guard in *Estes*. [¶] . . . Constructive possession depends upon a special relationship with the owner of the property, not upon the motives of a person seeking to recover possession from a thief or burglar. The fact [the guard] was employed as a guard for another business did not make him an agent of [the burglarized store.] His relationship to [that store] was that of a neighbor and good citizen seeking to catch a criminal." (*Sykes* v. *Superior Court, supra,* 30 Cal.App.4th at p. 484.)

Like the guard in *Sykes*, Steadman was well intended. But good motives alone cannot substitute for the special relationship needed to create a possessory interest in the goods.[1] Thus, while Galoia may have committed several other uncharged offenses,[2] his conviction for robbery cannot stand.

Judgment reversed.

Wallin, J., concurred.

**SILLS, P. J.,** Dissenting.—Whether the crime Galoia committed was a robbery may only be determined after consideration of *all* the circumstances surrounding the event and a presumption in favor of the verdict. (See *People* v. *Jones* (1990) 51 Cal.3d 294, 314 [270 Cal.Rptr. 611, 792 P.2d 643].) Focusing on the force Galoia used at the moment of taking the property, or limiting the review to just an analysis of Steadman's status, is like placing blinders on a horse: it may very well move forward as the driver commands, but it cannot see the whole picture.

It is undisputed that a robber can commit a robbery *without* a show of force at the time of the taking as long as force is exerted later to retain the stolen goods. (See *People* v. *Cooper* (1991) 53 Cal.3d 1158, 1164-1165 [282 Cal.Rptr. 450, 811 P.2d 742].) And there are circumstances when the actual, or constructive, owner of the goods need not be the person from whom the property is taken. For instance, in *People* v. *Moore* (1970) 4 Cal.App.3d 668 [84 Cal.Rptr. 771], two girls were running a store for its owner. They were held up, but thought the robber was only joking when he demanded the store's money. The mother of one happened to appear and understood

---

[1]As explained and illustrated above, the requirement that the property be taken from the "possession of another" may be established only by proving the victim has a legally recognizable interest in the property or actually possessed it. The dissent's reliance on *People* v. *Moore, supra,* 4 Cal.App.3d 668, is therefore misplaced because there the victim was in actual possession. Here, by contrast, Steadman neither possessed nor had a right to control the property.

Perhaps it makes more sense for the law to be as the dissent would have it. But centuries of common law and statutory mandate do not allow us the luxury of writing on a clean slate.

[2]Burglary, petty theft, and battery come to mind.

immediately what was going on. She obeyed the robber by withdrawing the cash from the register and handing it to him. Unquestionably, the mother held no greater property interest in the money than did Steadman. Just because she touched the money as she handed it to Moore, it did not magically transform into her property. The crux was Moore's conduct in relation to the mother: he demanded the money—she obeyed.

*Sykes* v. *Superior Court* (1994) 30 Cal.App.4th 479 [35 Cal.Rptr.2d 571] is distinguishable on its facts. In *Sykes*, the property was taken from *no one's* presence; Sykes took the saxophone after burglarizing a closed business. A Good Samaritan across the street happened to see him leave and gave chase. The Good Samaritan acted on his own throughout the ordeal. In the case before us, Galoia grabbed the beer from the cashier—the constructive owner of the property—and used threats and force to retain it from Steadman who came to the aid of the cashier. The distinguishing fact is what the *Sykes* opinion pivoted on: the relationship between the third party and the owner, and that the property was actually taken from the presence of the owner.

The majority's attempt to distinguish *People* v. *Estes* (1983) 147 Cal.App.3d 23 [194 Cal.Rptr. 909] on the basis that Steadman was an independent contractor as opposed to an employee defies common sense and ignores reality in the business world. If this be the law, no retail establishment which contracts with a private security firm to provide guards is safe from robbers and highwaymen. Steadman had as much economic interest in the continued financial viability of this convenience store as any minimum-wage clerk. The Attorney General's argument is to my mind compelling.

Galoia grabbed the property from the cashier and used the necessary force against Steadman to retain it. Looking at the situation in its entirety and applying mere common sense, Galoia committed a robbery. *He* knew what he was doing. He should not suddenly be less a robber simply because he threatened a subcontractor to the business instead of the mother of an employee. I would affirm the judgment.

Respondent's petition for review by the Supreme Court was denied March 16, 1995.