[No. B157983. Second Dist., Div. Five. Aug. 20, 2003.]

THE PEOPLE, Plaintiff and Respondent, v.
KEVIN CHARLES GILBEAUX, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION*]**

---

* Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion, including the dissenting opinion, is certified for publication with the exception of parts IC and II through V of the Discussion in the majority opinion.

**COUNSEL**

Edward J. Haggerty, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Jaime L. Fuster and Michael C. Keller, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**GRIGNON, J.**—Two armed men commit a robbery in a grocery store. Present in the store at the time of the robbery are four store employees: an assistant manager, a checker, a stocker, and a warehouse clerk. Also present in the store are two janitors employed by a cleaning company but regularly assigned to the store. At gunpoint, the robbers bind the two janitors and the stocker and imprison the two janitors, the stocker, and the checker in a storage room. One of the robbers forces the assistant manager to open the safe and put the money in a bag. While the robbery is ongoing, the warehouse clerk observes one of the robbers point a gun at the assistant manager. The warehouse clerk flees to a back office, locks the door, and calls the police. Defendant is convicted of the robbery of all six victims. Defendant contends the evidence is insufficient to support the robbery convictions as to the two janitors and the warehouse clerk. In the published portion of this opinion, we conclude the two janitors were in constructive possession of the property of the store. In the unpublished portion of the opinion, we conclude property was taken from the immediate presence of the warehouse clerk by fear and also consider defendant's sentencing issues. We modify the sentence, but otherwise affirm.

## PROCEDURAL BACKGROUND

Defendant and appellant Kevin Charles Gilbeaux and codefendant Rodney Victor Coleman were charged by information with six counts of armed robbery and one count of assault with a firearm in violation of Penal Code

sections 211, 245, subdivision (a)(2), 12022.53, and 12022.5. It was further alleged defendant had suffered three prior serious felony convictions within the meaning of Penal Code section 1170.12 and two prior serious felony convictions within the meaning of Penal Code section 667, subdivision (a). Defendant and codefendant Coleman were tried separately.[1] Defendant was convicted as charged by the jury. The trial court found the prior serious felony conviction allegations to be true. Defendant was sentenced to seven consecutive 25-year-to-life sentences, six 10-year firearm use enhancements, and two 5-year prior serious felony conviction enhancements for an aggregate sentence of 245 years to life. Defendant appeals. In addition to his sufficiency of the evidence contentions, defendant contends the sentence for assault with a firearm must be stayed pursuant to Penal Code section 654, the trial court erred in imposing consecutive sentences, the trial court abused its discretion when it refused to strike any of the prior serious felony conviction allegations, and his sentence constitutes cruel and unusual punishment.

## FACTS

The Food 4 Less grocery store in Long Beach closes at 1:00 a.m. After that time on June 3, 2001, six people were still working at the store. Joel Ortiz, the assistant grocery manager, was working in the bookkeeping office at the front of the store. Ortiz's shift was scheduled from 3:00 p.m. to 1:00 a.m. Lisa Guevara, a checker, was working on her final count of money from a register. Rodolfo Tovar was stocking bread. Jose Cuarsema, a warehouse clerk, was driving a forklift in the front of the store. Ortiz, Guevara, Tovar, and Cuarsema were employees of Food 4 Less. Bernardo Lopez and Marcos Camacho were janitors. They were not employees of Food 4 Less, but employees of Mr. Clean Maintenance Systems, who were regularly assigned to work at Food 4 Less. Their shift was 11:30 p.m. to 8:00 a.m. Lopez worked at Food 4 Less every working day and had been working there regularly for one month.[2] Lopez and Camacho were cleaning the store. The store security guards had gone off duty.

Meanwhile, defendant and codefendant Coleman were in the store preparing to commit a robbery. Both men were armed with handguns, wore ski masks to conceal their faces, and carried walkie-talkies and duct tape. Lopez sent Camacho to the storage room in the back of the store to retrieve a broom. Camacho was bound, blindfolded, and gagged with duct tape by the robbers and left on the floor in the storage room. Lopez went to see what was

---

[1] Codefendant Coleman was also charged with the attempted murder of a responding police officer. He was subsequently convicted by a different jury of the robberies and the attempted murder of the police officer. His appeal is pending.

[2] Camacho did not testify and, therefore, the details of his assignment to Food 4 Less are not included in the record.

keeping Camacho. When Lopez reached the storage room, defendant and codefendant Coleman confronted him. Codefendant Coleman held a gun to Lopez's abdomen and defendant pointed a gun at Lopez's head. The two robbers threw Lopez to the ground and questioned him concerning the whereabouts of other employees and any security guards. Lopez was bound, blindfolded, and gagged with duct tape.

A few minutes later, Tovar went to the restroom, which was located next to the storage room. As Tovar was leaving the restroom, he was confronted by defendant, who forced Tovar into the storage room where he was bound, blindfolded, and gagged.

Codefendant Coleman went to the front of the store, leaving defendant with Lopez, Tovar, and Camacho. Codefendant Coleman confronted Ortiz and Guevara at the front of the store and forced them to walk to the back of the store. Cuarsema saw codefendant Coleman point the gun at Ortiz. Cuarsema ran to an office in the back of the store, locked the door, and called the police. Cuarsema remained in the locked office for several hours until the police rescued him.

Defendant pulled Guevara into the storage room. Codefendant Coleman took Ortiz back to the front of the store and forced Ortiz to open the safe and empty the contents into a bag. Then codefendant Coleman proceeded to the front door with Ortiz preceding him. As Ortiz left the store, he noticed a police officer and threw himself to the ground just outside the door. Gunshots were exchanged between codefendant Coleman and the police. The police escorted Ortiz to safety. Codefendant Coleman returned to the back of the store and called to defendant that it was time to leave. Defendant had begun to bind Guevara, but left without finishing the task. After the robbers left, Guevara freed the other three captives and they gradually made their way to police protection.

Defendant and codefendant Coleman fled from the store, but police apprehended them. Defendant presented no affirmative defense.

## DISCUSSION

### I. *Sufficiency of the Evidence*

### A. *Standard of Review*

"In assessing a claim of insufficiency of evidence, the reviewing court's task is to review the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence—that is, evidence

which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. (*People* v. *Johnson* (1980) 26 Cal.3d 557, 578 [162 Cal.Rptr. 431, 606 P.2d 738].) The federal standard of review is to the same effect: Under principles of federal due process, review for sufficiency of evidence entails not the determination whether the reviewing court itself believes the evidence at trial establishes guilt beyond a reasonable doubt, but, instead, whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. (*Jackson* v. *Virginia* (1979) 443 U.S. 307, 317–320 [61 L.Ed.2d 560, 99 S.Ct. 2781].) The standard of review is the same in cases in which the prosecution relies mainly on circumstantial evidence. (*People* v. *Stanley* (1995) 10 Cal.4th 764, 792 [42 Cal.Rptr.2d 543, 897 P.2d 481].) ' "Although it is the duty of the jury to acquit a defendant if it finds that circumstantial evidence is susceptible of two interpretations, one of which suggests guilt and the other innocence [citations], it is the jury, not the appellate court[,] which must be convinced of the defendant's guilt beyond a reasonable doubt. ' "If the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also reasonably be reconciled with a contrary finding does not warrant a reversal of the judgment." ' [Citations.]" ' [Citation.]" (*People* v. *Rodriguez* (1999) 20 Cal.4th 1, 11 [82 Cal.Rptr.2d 413, 971 P.2d 618].)

## B. *Constructive Possession*

Defendant contends the evidence is insufficient to support his convictions for the robberies of the two janitors, Lopez and Camacho. He argues Lopez and Camacho were not in constructive possession of the money of Food 4 Less. This argument has two prongs. First, defendant argues the janitors were not in constructive possession of the money in the safe because other employees with greater access to the money were present at the time of the robberies. He asserts janitors may be in constructive possession of business property only if they are in sole possession of the premises at the time of a robbery. Second, defendant argues that the janitors were not in constructive possession of the money in the safe because they were not employees of Food 4 Less, but employees of a cleaning company.

"[I]n order to constitute robbery, property must be taken from the possession of the victim by means of force or fear. 'To constitute robbery the property must be removed from the possession and immediate presence of the victim against his will, and such removal must be by force or fear.' " (*People* v. *Nguyen* (2000) 24 Cal.4th 756, 761 [102 Cal.Rptr.2d 548, 14 P.3d 221].) ██ Possession may be either actual or constructive. (*People* v.

*Jones* (1996) 42 Cal.App.4th 1047, 1053 [50 Cal.Rptr.2d 46].) Store employees may be in constructive possession of the property of the store. " ' "Robbery is an offense against the person; thus a store employee may be the victim of a robbery even though he is not its owner and not at the moment in immediate control of the stolen property." ' " (*Ibid.*) "[B]usiness employees—whatever their function—have sufficient representative capacity to their employer so as to be in possession of property stolen from the business owner." (*People v. Jones* (2000) 82 Cal.App.4th 485, 491 [98 Cal.Rptr.2d 329].)

■ It is not necessary that an employee have specific responsibility for handling cash in order to be a robbery victim. (*Id.* at p. 490.) Robbery convictions, where a business is the object of the robbery, have been upheld where the victims have been a security guard, janitor, and night watchman. (*People v. Nguyen, supra,* 24 Cal.4th at p. 761.) Robbery convictions have also been upheld where the victim has been a store truck driver talking to a cashier. (*People v. Jones, supra,* 42 Cal.App.4th at p. 1054.) Robbery convictions have similarly been upheld where the victims have been a personnel manager, sales associate, pantry clerk, and inventory control clerk. (*People v. Jones, supra,* 82 Cal.App.4th at p. 491.) In addition, robbery convictions have been upheld where the victims have been employees servicing customers as well as employees stocking shelves. (*People v. Frazer* (2003) 106 Cal.App.4th 1105, 1119–1120 [131 Cal.Rptr.2d 319].)

■ More than one employee may be in constructive possession of the store's property at the same time. (*People v. Miller* (1977) 18 Cal.3d 873, 881 [135 Cal.Rptr. 654, 558 P.2d 552].)

■ Constructive possession may be in a servant or agent of a business owner. (*People v. Downs* (1952) 114 Cal.App.2d 758, 765–766 [251 P.2d 369].) " 'As against the robber, a servant has the same right, and rests under the same duty, to preserve and defend his possession of the property that the owner has. He is the custodian, and has a right to oppose the violence offered by the robber with violence, if necessary ....' " (*Id.* at p. 766.) " 'Various types of servants and agents have been held to have had possession of [business] property taken, for the purposes of [robbery convictions].' " (*Ibid.*) In considering the issue of constructive possession as to nonemployees, the purported victim must have a special relationship with the owner of the property. (*Sykes v. Superior Court* (1994) 30 Cal.App.4th 479, 484 [35 Cal.Rptr.2d 571] [security guard for a neighboring business has no special relationship]; *People v. Galoia* (1994) 31 Cal.App.4th 595, 597–599 [37 Cal.Rptr.2d 117] [owner of video game machines in the convenience store that was the object of the robbery has no special relationship].)

Two Court of Appeal cases have held that a janitor may be in constructive possession of business property. (*People v. Dean* (1924) 66 Cal.App. 602, 606–607 [226 P. 943]; *People v. Downs, supra,* 114 Cal.App.2d at pp. 765–766.) These cases have been cited with approval by the Supreme Court.

(*People v. Miller, supra,* 18 Cal.3d at pp. 880–881; *People v. Nguyen, supra,* 24 Cal.4th at p. 761.) In *People v. Dean,* the defendant and his accomplices committed a robbery at a theater in the early morning. Present at the theater at the time were the night janitor/watchman and the day janitor/watchman. Both janitors were bound, blindfolded, and confined at gunpoint while the robbers blew open the safe with explosives. The robbers took money from the safe and left. (*People v. Dean, supra,* 66 Cal.App. at pp. 604–605.) The Court of Appeal held the two janitors were in possession of the money in the theater safe for the purpose of defendant's robbery conviction: "While these men did not own the money, nor even know the amount in the safe, yet they were rightfully in possession of the theater and its contents at the time of the robbery and were entitled to this possession as against the defendant." (*People v. Dean, supra,* 66 Cal.App. at p. 607.) In *People v. Downs,* shortly before midnight, defendant and an accomplice entered a telephone company to commit a burglary. While the burglars were taking money from the safe, they were interrupted by two janitors. The two burglars bound the two janitors, completed the theft and left with the money from the safe. The Court of Appeal held that the two janitors were in possession of the money in the safe for the purpose of the defendant's robbery conviction. (*People v. Downs, supra,* 114 Cal.App.2d at p. 766.)

In *Dean* and *Downs,* the two janitors were apparently in sole possession of the business premises at the time of the robbery. The Supreme Court has held that this fact is not relevant to the constructive possession issue. In *People v. Miller, supra,* 18 Cal.3d 873, defendant and an accomplice committed a robbery in a jewelry store during business hours. Present in the store at the time of the robbery were salespersons and other employees, as well as a nonuniformed security guard, who had been shot by one of the robbers in the course of the robbery. (*People v. Miller, supra,* 18 Cal.3d at pp. 878–879.) The Supreme Court concluded the security guard had constructive possession of the jewelry taken from the store. In reaching this conclusion, the Supreme Court relied on *Dean* and *Downs.* The Supreme Court stated: "Defendant would distinguish the foregoing cases on the ground that the victims of the robberies in those cases were the only persons present at the times of the robberies and, accordingly, were the only persons who could have been vested with constructive possession and from whom the personal property could have been taken. But the distinction is not one which excludes [the security guard] as a potential robbery victim. He had constructive possession at the time of the robbery in the same sense as did the night watchman at the time of the robbery in *Dean.* The fact that there were other persons present in the store who also had constructive possession of the personal property is not relevant as more than one person may constructively possess personal property at the same time and be a victim of the same offender." (*Id.* at p. 881.)

In this case, Lopez and Camacho were janitors whose responsibility was to clean and maintain the Food 4 Less store. Although they were employed by a cleaning company and not Food 4 Less, the cleaning company had contracted with Food 4 Less to provide janitors, and Lopez and Camacho had been regularly assigned to work at the Food 4 Less store. The store employees knew them by name. The store closed at 1:00 a.m., and Lopez and Camacho were to clean and maintain the store primarily during the hours when the store was closed. They apparently had access to the entire store. The security guards had gone off duty, the assistant manager's shift was over, and the checker was completing her final count. Presumably, were it not for the robbery, Lopez and Camacho would shortly have been two of a small number of workers in charge of the premises while the business was closed. Perhaps they would have been the sole workers, since the record does not reflect the working hours of the stocker or the warehouse clerk. Both Lopez and Camacho were confined in the storage room by the robbers. Both were bound, gagged and blindfolded. Lopez was questioned at gunpoint as to the whereabouts of any security guards and the other employees. The robbers treated Lopez as if he was an employee.

■ We conclude Lopez and Camacho had constructive possession of the property of Food 4 Less in the same sense as had the janitors in *Dean* and *Downs* at the time of the robberies in those cases. They were part of the group of workers in charge of the premises at the time of the robbery. The fact that other workers were also present in the store who also had constructive possession does not alter the conclusion. Moreover, it is irrelevant that Lopez and Camacho had no responsibility for handling the cash. In this regard, they were in a position similar to the truck driver in *People v. Jones, supra,* 42 Cal.App.4th 1047. It is true that Lopez and Camacho were not employees of Food 4 Less, but they had a special relationship with Food 4 Less that made them akin to employees. There are many tax, business, insurance, and liability reasons for a business to use contract workers rather than employees, but none of these reasons reflect on the issue of a worker's possession of the property of a business as against a robber. The janitors were servants or agents of Food 4 Less for the purpose of the robbery. Substantial evidence supports the conclusion that Lopez and Camacho had sufficient representative capacity with respect to Food 4 Less so as to be in constructive possession of property stolen from Food 4 Less.

C.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

\* See footnote *ante,* page 515.

II–V*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## DISPOSITION

The judgment is modified by staying the 25-year-to-life sentence on count 8 (assault with a firearm on Lopez) pursuant to Penal Code section 654. The sentence is stayed pending the completion of the sentence on count 6 (robbery of Lopez) and then permanently stayed. The aggregate sentence is thereby reduced to 220 years to life. The clerk of the superior court is directed to prepare a modified abstract of judgment and forward the modified abstract to the Department of Corrections. As modified, the judgment is affirmed.

Turner, P. J., concurred.

**MOSK, J.,**—Dissenting in part.

I respectfully dissent from the portion of the majority opinion that affirms the judgment as to counts 5 and 6.

The two janitors, Bernardo Lopez (Lopez) and Marcos Camacho (Camacho), did not, under the authorities, have a relationship with the Food 4 Less store sufficient to support a finding that they had constructive possession of the store's property so as to be deemed victims of the robbery of the store. Parenthetically, eliminating them as victims would reduce defendant's sentence from 245 years to life to 175 years to life.[1]

As to the definition of robbery as the "felonious taking of personal property in the possession of another, from his person or immediate presence ... accomplished by means of force or fear" (Pen. Code, § 211), the Supreme Court in *People v. Nguyen* (2000) 24 Cal.4th 756, 762 [102 Cal.Rptr.2d 548, 14 P.3d 221] (*Nguyen*) noted that "the theory of constructive possession has been used to expand the concept of possession to include employees and others as robbery victims." The Supreme Court has not specified a standard regarding what constitutes constructive possession for the purpose of determining if a person is a robbery victim.[2]

---

* See footnote *ante*, page 515.

[1] If, as I conclude, the conviction for robbing Lopez cannot stand, defendant's conviction for assaulting Lopez with a firearm would not be stayed pursuant to Penal Code section 654. In the absence of a robbery conviction, Penal Code section 654 would not affect defendant's sentence for assault with a firearm.

[2] The question of what constitutes constructive possession occurs in California because this state adheres to "the traditional approach that limits victims of robbery to those persons in either actual or constructive possession of the property taken." (*Nguyen, supra,* 24 Cal.4th at

The Supreme Court in *Nguyen, supra,* 24 Cal.4th at pages 762–765, indicated that the requirement of possession or constructive possession imposes a limitation on which persons present at the scene of a robbery may be deemed robbery victims. Although there cannot be a robbery without a person being subject to "force or fear" (Pen. Code, § 211), not every person, nor even every employee, present at the scene of a robbery is a victim of that robbery. Two of the latest cases on the subject adequately express who should be included and who should be excluded as robbery victims.

In *People v. Jones* (1996) 42 Cal.App.4th 1047, 1054 [50 Cal.Rptr.2d 46] (*Jones*), the court stated that in order to be a robbery victim, a person must have actual possession of the property or act in "some representative capacity with respect to the owner of the property. The person must have express or implied authority over the items taken. [Citation.]" In *People v. Frazer* (2003) 106 Cal.App.4th 1105, 1115 [131 Cal.Rptr.2d 319] (*Frazer*) the court proposed the same test as in *Jones* for constructive possession and explained, "Under this standard, employee status does not alone as a matter of law establish constructive possession. Rather, the record must show indicia of express or implied authority under the particular circumstances of the case. To illustrate, a janitor may well be deemed to have implied authority if all other employees who handle the cash are gone. (*People v. Downs* [(1952)] 114 Cal.App.2d [758,] 765–766 [251 P.2d 369] [(*Downs*)].) On the other hand, by virtue of his job title charging him with guarding the premises, a security guard may be deemed to have authority even when other employees who handle the property are present. (*People v. Miller* [(1977)] 18 Cal.3d [873,] 880–881 [135 Cal.Rptr. 654, 558 P.2d 552].)"

There is no substantial evidence that at the time of the robbery, the janitors, Lopez and Camacho, had the necessary authority or responsibility with respect to the store to be robbery victims. They lacked employment responsibilities that would involve any representative capacity that could confer authority over store funds or property. They did not handle inventory, serve customers, or perform sales. The workers in *Frazer, supra,* 106 Cal.App.4th at pages 1119–1120, did so and thus were considered to be part of a "retail team" invested with express or implied authority over store property. There is no evidence that at the time of the robbery the janitors, who were not even employees of the store, had any express or implied authority to deal with the store property or to protect it in any way.

This case is distinguishable from *Downs, supra,* 114 Cal.App.2d at page 760, in which two janitors, who were the only people on company premises

p. 764.) The issue does not arise in many states because they either do not require that the property be taken from the possession of the victim (*id.* at p. 763, fn. 4; see Model Pen. Code, § 222.1) or they define robbery to include the threat or use of force "against the person of the owner or *any person present.*" (*Nguyen,* at p. 763, fn. 4.)

at the time of a burglary, were deemed to be in constructive possession of the stolen company funds and therefore were robbery victims. The *Downs* defendants were convicted of robbing the janitors on the basis of the janitors' constructive possession of company property. (*Id.* at p. 765.) The Court of Appeal affirmed the convictions, stating, "We regard it as no undue extension of the robbery statute to hold it applicable to any servant or servants left in *sole occupation* of the premises or particular part thereof by the employer." (*Id.* at p. 766, italics added; see *Frazer, supra,* 106 Cal.App.4th at p. 1115 ["a janitor may well be deemed to have implied authority if all other employees who handle the cash are gone"].)

In contrast, here the janitors were not the only workers on the premises. Store employees with express or implied authority over store funds were present, including an assistant manager. It is true that multiple individuals may have constructive possession of the same property simultaneously. (*People v. Miller, supra,* 18 Cal.3d at p. 881.) Here, because people with actual authority over the premises and to handle store funds were present, the janitors cannot be considered to have had any implied authority over the premises or store property taken by defendant. Had these other employees not been present, one might infer that the requisite authority had been transferred to the janitors as the only ones present in the premises. That the janitors were employees of another company and not employees of the Food 4 Less is another indication that Lopez and Camacho lacked implied authority over Food 4 Less funds.

Because the record does not contain evidence that Lopez and Camacho had "sufficient representative capacity with respect to the owner of the property, so as to have express or implied authority over the property" (*Frazer, supra,* 106 Cal.App.4th at p. 1115), they did not have the requisite relationship with the Food 4 Less so as to be in constructive possession of the property stolen by defendant. Accordingly, I would reverse the convictions on counts 5 and 6 because there was insufficient evidence that Lopez and Camacho were victims of the robbery.

Appellant's petition for review by the Supreme Court was denied November 12, 2003.