Filed 6/17/14  P. v. Padilla CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  The opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>　　Plaintiff and Respondent,<br><br>　　　　v.<br><br>JERALD PADILLA,<br><br>　　Defendant and Appellant. | G048435<br><br>(Super. Ct. No. 12NF0798)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Steven D. Bromberg, Judge.  Affirmed as modified with directions.

Susan S. Bauguess, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, A. Natasha Cortina and Paige B. Hazard, Deputy Attorneys General, for Plaintiff and Respondent.

\*　　　　　\*　　　　　\*

A jury convicted defendant Jerald Padilla of assault with a semiautomatic firearm (Pen. Code, § 245, subd. (b); count 1; all statutory references are to the Penal Code unless otherwise stated), first degree residential burglary (§ 459; count 2) with a nonaccomplice present (§ 667.5, subd. (c)(21)), and second degree robbery (§§ 211/212.5, subd. (c); count 3). The jury also found true the allegation Padilla personally used a firearm (§ 12022.5, subd. (a); counts 1-3; § 12022.53, subd. (b); count 3). Padilla complains insufficient evidence supports his robbery conviction, but we do not find the contention persuasive. The parties agree we must modify the judgment to stay the firearm use enhancement attached to the robbery conviction. The parties also agree we should modify the judgment to accurately reflect presentence custody credit, and the sentencing minutes should be amended to delete reference to the duration of Padilla's parole. As modified, we affirm the judgment.

I

FACTUAL AND PROCEDURAL BACKGROUND

On the morning of March 12, 2012, Margarita Reyes observed two young Hispanic men, later identified as Padilla and Julian Robles, peeking into windows and knocking at the door of her Anaheim neighbor, Alma Montes. For the previous six or seven years, Reyes worked for Montes as a house cleaner two times per month, often while Montes was not home, and was getting ready to clean Montes's home when she spotted the men. Reyes also babysat Montes's grandchild in her own home three days a week. Although Reyes did not have a key to Montes's residence, she was provided one on occasion, and knew how to gain entry without a key.

Reyes phoned Montes. While on the phone, Reyes observed the men enter Montes's home through the garage, and informed Montes. Montes asked Reyes "to go

2

over [there] and tell them to leave," or "get them out of there." Officer Gallacher testified Montes stated she asked Reyes to go over, check on her house, see who was inside, and find out what was happening.

Reyes walked across the street and entered Montes's garage through a side door. She opened the door leading into the house and called out in Spanish, "'Who is in here? Because I'm going to clean the house.'" She saw the men rummaging in the master bedroom, but they climbed through a window when they saw her. Reyes walked outside, and saw one man run off. She encountered Padilla as she left through the garage side door "waiting for [her] with a gun there." He stood about eight feet from her but said nothing. Reyes ran home. Montes arrived home to discover the burglars had stolen wedding rings, keys, and cash.

A neighbor living behind Montes grabbed Padilla in his front yard. Padilla placed his hand near his pocket, and said, "'I'm sorry. I'm sorry.'" Padilla broke free, but a police officer found Padilla kneeling behind a trash can. He had some of Montes's jewelry, keys and cash. The officer found a loaded .32 caliber semiautomatic handgun nearby. Another officer apprehended Robles.

Following trial in February 2013, a jury convicted Padilla as noted above. In May 2013, the trial court sentenced Padilla to an aggregate term of 19 years in prison, comprised of the upper nine-year term for aggravated assault (count 1) plus a 10-year firearm use enhancement (§ 12022.5, subd. (a)), a concurrent four-year midterm for burglary (count 2), and a stayed (§ 654) three-year midterm for second degree robbery (count 3). Padilla received presentence custody credit of 424 actual days, and 63 days of conduct credit (§ 2933.1), for a total of 487 days.

3

II

DISCUSSION

A.    *Substantial Evidence Supports Padilla's Robbery Conviction*

Padilla challenges both the trial court's denial of his section 1118.1 motion for judgment of acquittal made at the conclusion of the prosecution's case,[1] and the sufficiency of the evidence supporting his robbery conviction involving Reyes.[2] He complains Reyes did not own the residence or the property, and did not have a special relationship with Montes that would have given her a possessory interest or constructive possession of the stolen property. We disagree.

Section 211 defines robbery as "the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear." We review the order denying Padilla's motion for judgment of acquittal, and the sufficiency of evidence to support the robbery conviction, under the substantial evidence standard. (See *People v. Cole* (2004) 33 Cal.4th 1158, 1213 [appellate court reviews sufficiency of the evidence as it stood at the time of the § 1118.1 motion].) Under this standard, we review the entire record in the light most favorable to the judgment to determine whether it discloses evidence that is reasonable, credible, and of solid value such that a reasonable trier of fact could have

---

[1]    Section 1118.1 provides: "In a case tried before a jury, the court on motion of the defendant or on its own motion, at the close of the evidence on either side and before the case is submitted to the jury for decision, shall order the entry of a judgment of acquittal of one or more of the offenses charged in the accusatory pleading if the evidence then before the court is insufficient to sustain a conviction of such offense or offenses on appeal. If such a motion for judgment of acquittal at the close of the evidence offered by the prosecution is not granted, the defendant may offer evidence without first having reserved that right."

[2]    The only evidence presented after Padilla's motion was Officer Gallacher's testimony Montes stated she asked Reyes to go over, check on her house, and see who was inside.

found the defendant guilty beyond a reasonable doubt. (*People v. Story* (2009) 45 Cal.4th 1282, 1296; see *Jackson v. Virginia* (1979) 443 U.S. 307, 318-319 [inquiry requires a determination whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt].)

California follows "the traditional approach that limits victims of robbery to those persons in either actual or constructive possession of the property taken." (*People v. Nguyen* (2000) 24 Cal.4th 756, 764.) To establish "constructive possession" the "alleged victim of a robbery [must] have a 'special relationship' with the owner of the property such that the victim had authority or responsibility to protect the property on behalf of the owner." (*People v. Scott* (2009) 45 Cal.4th 743, 750.)

*Sykes v. Superior Court* (1994) 30 Cal.App.4th 479 (*Sykes*) and *People v. Galoia* (1994) 31 Cal.App.4th 595 (*Galoia*) describe circumstances deemed insufficient to show a victim had constructive possession of the stolen property because of a special relationship with the property owner. In *Sykes*, a security guard employed by a business near a music store saw the defendant leave the music store carrying a saxophone. (*Sykes, supra*, at p. 481.) The security guard drew his firearm, ordered the defendant to stop, caught the defendant as he ran, and retrieved the saxophone. During the struggle, the defendant bit or scraped the guard's hand. The appellate court held there was insufficient evidence to charge the defendant with robbing the guard. (*Id.* at p. 484.) The court concluded the security guard did not have actual or constructive possession of the saxophone because the guard did not have a special relationship with the saxophone's owner. (*Ibid.*) Rather, "[h]is relationship [to the music store] was that of a neighbor and good citizen seeking to catch a criminal." (*Ibid.*)

In *Galoia*, the defendant entered a convenience store, grabbed several items, and fled. A man servicing his video game machines inside the store pursued the defendant and told him to stop. The defendant turned and while threatening the vendor, the defendant's companion hit the vendor from behind. The defendant and his accomplice fled with the property. (*Galoia, supra,* 31 Cal.App.4th at p. 597.)

*Galoia* held the vendor lacked a sufficient interest in the stolen property to be a robbery victim. The court noted that unlike a store security guard (see *People v. Estes* (1983) 147 Cal.App.3d 23), the vendor "was not an employee or agent of the convenience store. Nor was he in any way responsible for the security of the items taken." (*Galoia, supra,* 31 Cal.App.4th at p. 597.) The court also rejected the Attorney General's argument the vendor was acting under the store's implicit authorization when he pursued the defendant because "no one from the store instructed [the vendor] to give chase, and there is no evidence [he] was motivated by anything other than good citizenship." (*Galoia, supra,* at p. 598.) The court noted "just because [the vendor] and the store mutually benefited from the video machines does not mean [the vendor] had a legally recognized interest in or right to control store property. His relationship to the store was far more attenuated than persons recognized by the law as potential robbery victims, such as bailees, servants, cashiers, store managers, clerks, watch persons, janitors, bartenders and station attendants. [Citations.] (*Galoia, supra,* at p. 598.) The court explained "[l]ike the guard in *Sykes,* [the vendor] was well intended. But good motives alone cannot substitute for the special relationship needed to create a possessory interest in the goods." (*Galoia, supra,* at p. 599.)

In contrast, *People v. Bekele* (1995) 33 Cal.App.4th 1457 (*Bekele*), disapproved on other grounds in *People v. Rodriguez* (1999) 20 Cal.4th 1, 13-14. depicts

6

the factors necessary to show a special relationship. There, coworkers Jump and Fernandez were driving a work vehicle when they spotted the defendant burglarizing Jump's truck. The defendant removed Jump's tape deck and speakers from the truck. Jump and Fernandez told the defendant to stop, and Fernandez gave chase. The defendant produced a firearm, pointed it at Fernandez, and said, "'Don't.'" (*Bekele, supra,* at p. 1460.) The appellate court upheld the robbery conviction as to Fernandez, explaining a robbery victim "'must have an ownership interest in the property taken, *or some representative capacity with respect to the owner of the property taken*, or actual possession of the property taken, for the taking of the property to constitute a robbery." [Citation.] . . . [¶] Here . . . the evidence demonstrated that Fernandez had a representative capacity with respect to Jump's property, in that he had implied authority from Jump to take action to prevent its theft. When Jump saw his truck being burglarized, he said to Fernandez, 'Let's stop.' The two of them acted in concert to interrupt the burglary: they simultaneously left the front-end loader to approach Jump's truck, and both told Bekele to stop. The obvious implication was that Jump wanted Fernandez to help safeguard Jump's property by putting a stop to the theft. Fernandez was acting in that representative capacity when he struck Bekele and then chased after him, yelling 'Stop, drop the bag.' Fernandez's position was analogous to that of the security guard who has constructive possession, though not immediate control, of the property he is charged with safekeeping." (*Id.* at pp. 1461-1462.)

Here, the evidence reflects Montes and Reyes had a long-standing employment relationship and Montes expressly directed Reyes to remove Padilla and Robles from her home. Montes was not present to protect her belongings, and the jury could construe Montes's request to remove the intruders as an implicit appeal to protect

7

her personal property. Reyes acted in a representative capacity, not unlike a security guard, watchperson, or janitor, to protect Montes's property when Padilla displayed the firearm to escape with the loot. Montes requested Reyes to intervene and Montes agreed based on their relationship. She therefore had the right to protect Montes's property. (*People v. Weddles* (2010) 184 Cal.App.4th 1365, 1369-1370 [property owner's brother constructively possessed property because he was regularly present in the home, knew where property was hidden, and during course of the robbery the property owner instructed his brother to show assailants where the money was kept]; *People v. Neely* (2009) 176 Cal.App.4th 787, 794 [apprentice at a cellular phone store who received profits from the sale of ringtones constructively possessed the store's property based on his presence in the store, performing services for the store, and his relationship to the store owner].) The evidence therefore supported the conclusion Reyes was not a "mere visitor" or Good Samaritan with no authority or responsibility to protect Montes's rights to the property. The court did not err in denying the section 1118.1 motion, and substantial evidence supports Padilla's robbery conviction.

B.    *The Trial Court Erred by Imposing a Concurrent Term for the Section 12022.53 Firearm Use Enhancement Associated with the Count 3 Robbery Conviction*

Padilla also argues the trial court erred by imposing a concurrent 10-year term for the section 12022.53 weapon use enhancement associated with the robbery conviction (count 3) because the court stayed punishment for robbery under section 654. The trial court stated "[a]s to the 654, counts 1 and 3 do merge. The offense charged in count 3 [robbery] was necessarily incidental to the defendant's intent to commit the ultimate offense [assault with a semiautomatic firearm] in count 1." The Attorney General concedes the court erred by failing to stay the enhancement term. (*People v.*

*Bracamonte* (2003) 106 Cal.App.4th 704, 709 ["Where the base term of a sentence is stayed under section 654, the attendant [weapon use] enhancements must also be stayed"].) We accept the concession. We will modify the judgment and direct the court to correct its minutes.

C.    *The Sentencing Minute Order Must Be Amended to Reflect the Court Did Not Order a Five-Year Parole Period*

At sentencing, the court stated, "The defendant shall be placed on parole, which I suspect he will be on parole for a period of five years, unless otherwise determined by the Department of Parole. And he shall report to Parole within 24 hours of release from prison." The sentencing minute order provides, "The defendant shall be on Parole for 5 years unless otherwise determined by the Department of Parole." Padilla asserts the trial court erred by imposing a five-year parole period.

Section 1170, subdivision (a)(3), provides that "In any case in which the punishment prescribed by statute for a person convicted of a public offense is a term of imprisonment in the state prison of any specification of three time periods, . . . [t]he court shall advise the defendant that he or she shall serve a period of parole and order the defendant to report to the parole office closest to the defendant's last legal residence, unless the in-custody credits equal the total sentence, including both confinement time and the period of parole." The length of time an offender may remain on parole is measured by statutory provisions setting the maximum parole period for most offenses, including those suffered by Padilla, at three years. (*People v. Jefferson* (1999) 21 Cal.4th 86, 95-96; see § 3000, subd. (b)(1).)[3] The trial court erred when it ordered Padilla to

---

[3]    Section 3000, subdivision (a)(1) provides in part that "A sentence resulting in imprisonment in the state prison pursuant to Section 1168 or 1170 shall include a period of parole supervision or postrelease community supervision, unless waived, or as otherwise provided in this article." Section 3000, subdivision (b)(1) provides in part that

serve a five-year parole period following his release from prison.  The Attorney General does not oppose correcting the sentencing minute order to delete the court's imposition of a five-year parole period.

D.    *Padilla Is Entitled to One Additional Day of Presentence Custody Credit*

Police arrested and took Padilla into custody March 12, 2012, and the court sentenced him on May 10, 2013.  This corresponds to 425 days spent in actual custody, not the 424 days recognized by the trial court.  Padilla argues, and the Attorney General concedes, Padilla is entitled to one additional day of custody credit.  We will modify the judgment accordingly.

## III

### DISPOSITION

The judgment is modified (§ 1260) to stay the section 12022.53, subdivision (b), firearm use enhancement associated with count 3 under section 654, and to award Padilla 425 days spent in actual custody for a total of 488 days of credit.  In all other respects, the judgment is affirmed.  The trial court is directed to amend its May 10, 2013, sentencing minute order to reflect the stay of the section 12022.53, subdivision (b) enhancement associated with count 3, to correct the award of custody credits, and to delete the following:  "The defendant shall be on parole for 5 years unless otherwise

---

"In the case of any inmate sentenced under Section 1168 for a crime committed prior to July 1, 2013, the period of parole shall not exceed five years in the case of an inmate imprisoned for any offense other than first or second degree murder for which the inmate has received a life sentence, and shall not exceed three years in the case of any other inmate, unless in either case the Board of Parole Hearings for good cause waives parole and discharges the inmate from custody of the department."  There is no apparent requirement that the trial court's pronouncement of judgment include reference to the period of parole.  (See § 1170, subd. (a)(3) [court must advise the defendant he or she shall serve a period of parole and order the defendant to report to the parole office closest to the defendant's last legal residence].)

10

determined by the Department of Parole." The court shall serve the amended sentencing minute order on the parties. The trial court is directed to prepare and forward an amended abstract of judgment to the Department of Corrections and Rehabilitation.


ARONSON, J.

WE CONCUR:


O'LEARY, P. J.


BEDSWORTH, J.