[Crim. No. 13989. Fourth Dist., Div. One. Oct. 13, 1982.]

THE PEOPLE, Plaintiff and Respondent, v.
JEROME GORDON, Defendant and Appellant.

**COUNSEL**

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, and David Y. Stanley, Deputy State Public Defender, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, Anthony L. Dicce and Ramon M. de la Guardia, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**BORUNDA, J.***—After jury trial, Jerome Gordon was found guilty of two counts of robbery (Pen. Code, § 211) while armed (Pen. Code, § 12022, subd. (a)), possessing concentrated cannabis (Health & Saf. Code, § 11357, subd. (a)), and cultivating marijuana (Health & Saf. Code, § 11358).

Gordon was sentenced on counts I and II to prison for the base term of five years plus one year for the use allegation. The sentence was stayed as to count I. He was sentenced to time served on counts III and IV.

Gordon appeals the judgment of conviction for counts I and II, the robberies.

In the afternoon of August 1, 1980, two black men came to the home of Joseph and Mary Lopes asking to use the telephone. After being admitted, the taller man displayed a pistol and ordered Mr. Lopes to lie

---

*Assigned by the Chairperson of the Judicial Council.

on the floor. When Mrs. Lopes heard this command, she entered the kitchen area and was told to lie down next to her husband. Gordon said to Mrs. Lopes, "Lady, that's on account of your fucking son that we are here. Your son owes us a lot of fucking money." After the two men bound Mr. and Mrs. Lopes, Gordon entered the bedroom of Anthony Lopes (Anthony), their son. He came out of the room carrying a shoulder bag. They saw nothing else taken from the residence.

Anthony testified he lost $1,000, two pounds of marijuana and a shoulder bag from his bedroom. At trial, Joseph Lopes identified Gordon as the shorter of the two men. Mrs. Lopes identified Gordon as one of the two men who entered her home and took property from her son's room.

On August 15, 1980, the police searched Gordon's residence, seizing hashish, a wallet, a marijuana plant, a revolver and some tennis shoes.

Gordon contends his convictions for robbery should be reversed because the court admitted illegally seized evidence, the evidence was insufficient to sustain the robbery verdicts, the defense attorney performed ineffectively, the prosecutor engaged in improper conduct and the court failed to instruct properly.

The contentions concerning the suppression of evidence and the insufficiency of evidence merit particular attention in the context of this particular case.

### THE COURT IMPROPERLY ADMITTED AS EVIDENCE AN ITEM WHICH HAD BEEN ILLEGALLY SEIZED

While executing a search warrant, Officer Johnny Mercer found Gordon's wallet on the kitchen counter of his home. Inside the wallet, he found several papers, including a map of the Lopes' residence. At the preliminary examination, the following exchange occurred:

"MR. SEELEY: Did you find anything else in the wallet that caught your attention?

"MR. CHASE: Objection, Your Honor. First, if you would take a look at the warrant you will find that *that was not one of the items that was mentioned as being an item that was subject to search* or that they were supposed to be searching for, I don't believe. *There's no reason for them to look inside of a wallet.* (Italics added.)

"THE COURT: That's true, but there was a request of the magistrate when they issued the warrant to be allowed to search for indicia of residency.

"MR. SEELEY: Was money included in that, Your Honor? I don't have a copy of—

"THE COURT: The following property: Vinyl carrying bag, shoes or footwear, blue steel revolver. That's it. Those three items were the things set forth that they were—that Detective Mercer requested in his affidavit they be allowed to search for. *The objection's well taken. It will be sustained.*" (Italics added.)

Later in the preliminary examination, a further exchange concerning the wallet occurred: "MR. CHASE: Your Honor, with respect to the 1538.5 motion which His Honor granted with respect to the items of identification that were found inside the wallet, I wish that that motion would go to anything that was found inside the wallet, Your Honor.

"MR. SEELEY: Your Honor, I really haven't presented the evidence at this time, but I think that the People are eventually going to be able to get that in. There's dual grounds for the search. We have a parole search.

"THE COURT: There's a booking search I presume and a parole search. *I'm not going to make any ruling as to the contents of the wallet other than I've suppressed it in this hearing.* (Italics added.)

"MR. SEELEY: We intend to reoffer that in Superior Court under a different basis."

The superior court reviewed the excerpts from the preliminary transcript and concluded "there wasn't any formal motion to suppress or to return." The court also found there was no unambiguous ruling by the magistrate to put the People on notice that a de novo hearing was required. The court cited *People* v. *Freeman* (1979) 95 Cal.App.3d 917 [157 Cal.Rptr. 454], in support of its decision.

Penal Code section 1538.5, subdivision (a)(2), provides: "(a) A defendant may move for the return of property or to suppress as evidence any tangible or intangible thing obtained as a result of a search or seizure on either of the following grounds:

"⋅ ⋅ ⋅ ⋅ ⋅ ⋅ ⋅ ⋅ ⋅ ⋅ ⋅ ⋅ ⋅ ⋅ ⋅ ⋅ ⋅ ⋅ ⋅ ⋅ ⋅ ⋅

"(2) The search or seizure with a warrant was unreasonable because . . . (ii) the property or evidence obtained is not that described in the warrant."

Gordon objected to the wallet on grounds "that was not one of the items that was mentioned as being an item that was subject to search." This language is clearly a motion to suppress pursuant to Penal Code section 1538.5, subdivision (a)(2)(ii).

In *People* v. *O'Brien* (1969) 71 Cal.2d 394 [78 Cal.Rptr. 202, 79 Cal.Rptr. 313, 456 P.2d 969], the court made the following statement (p. 403, fn. 5): "Although the statute contemplates that the issue will be raised by motion, a defendant who does so by the traditional procedure of objecting to the admission of the evidence on Fourth Amendment grounds should not be penalized merely for using the wrong words; such an objection, rather, should be construed whenever possible as a motion under subdivision (h)."

We find a motion to suppress the wallet and its contents was made and ruled upon. The magistrate's ruling binds the superior court. "Section 1538.5, subdivision (j), is plain. The conclusion of the committing magistrate, in view of the failure of the People to follow the procedure set forth in the statute for relitigating de novo the validity of the seizure, '[is] binding on the people . . . .' " (*Eiseman* v. *Superior Court,* 21 Cal.App.3d 342, 348 [98 Cal.Rptr. 342].)

We distinguish the present case from *People* v. *Freeman, supra,* 95 Cal.App.3d 917. In *Freeman,* the following occurred (at p. 921): "Just prior to resting at the preliminary hearing, the People moved that the wallet and contents be received into evidence. Defense counsel objected to the introduction of the exhibit on the ground there was an unlawful detention when the officer told appellant to stop. The magistrate stated: 'The motion to introduce the evidence will be denied at this time.' Appellant was nevertheless held to answer based on the other evidence."

The superior court reviewed the transcript of the preliminary examination and made this ruling: " 'I have read the transcript with special emphasis on the part that you are making the matter concerned here, and it's my ruling that there was no 1538.5 motion at the preliminary hearing; there has been no 1538.5 motion and there has never been an order by the court suppressing that evidence.' [Fn. omitted.] We affirm the trial court's ruling."

The court goes on (at p. 922): "The statutory sanction which prevents the People from introducing relevant evidence in superior court because of a ruling by a magistrate at a preliminary hearing is a severe one. In order to invoke such severe sanction, there should be strict compliance by the defendant with subdivision (f) and an unambiguous ruling by the magistrate sufficient to put the People on notice that a de novo hearing in superior court must be sought. [Citation.]"

In this case, counsel interposed an objection and made specific reference to Penal Code section 1538.5. The court's ruling was unambiguous. "I'm not going to make any ruling as to the contents of the wallet other than I've suppressed it in this hearing." The word "suppress" in a criminal case is peculiar to a Penal Code section 1538.5 motion. The response by the People to the court's decision supports a finding they were aware a motion to suppress had been granted.

The People failed to proceed pursuant to Penal Code section 1538.5, subdivision (j), providing for reconsideration of the motion before trial; since no motion was made, the superior court was bound by the decision of the magistrate, and the wallet (exhibit 25) and its contents should have been suppressed. Among the items in the wallet was a map of the Lopes residence (exhibit 25A) and a rent receipt (exhibit 25B).

The stipulation at trial by counsel that a valid parole search of Gordon's apartment occurred does not aid the People on this issue. The stipulation did not refer to the wallet and it is unclear from the record the specific requirements of the parole search.

■ However, a review of the entire record satisfies us the error in failing to suppress the map or the rent receipt did not result in a miscarriage of justice. Absent the map, the jury had an eyewitness identification by Mr. and Mrs. Lopes, the fingerprint from the atlas in Anthony's room, the shoe print from outside the house, as well as the firearm in Gordon's possession at the time of his arrest. Additional factors supporting the jury's determination are the marijuana seeds found in Gordon's residence and the fact he deposited $378 into the bank on August 11, 1980, sent $150 to Shirley Gordon on the same date, and was in possession of $149 on August 15, 1980, yet had not worked in two months. Counsel stipulated to the address of Gordon's residence. Therefore, the failure to suppress the rent receipt had no effect.

We are of the opinion it is not reasonably probable a result more favorable to Gordon would have been obtained in the absence of the

error of failing to suppress the map (*People* v. *Watson* (1956) 46 Cal.2d 818 [299 P.2d 243]). We also declare a belief the error was harmless beyond a reasonable doubt (*Chapman* v. *California* (1967) 386 U.S. 18 [17 L.Ed.2d 705, 87 S.Ct. 824]).

## THERE WAS SUFFICIENT EVIDENCE TO SUPPORT THE VERDICT ON COUNTS I AND II

■ Robbery is the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will accomplished by means of force or fear.

Gordon argues the findings by the jury of the elements of *"possession"* and *"immediate presence"* are not supported by substantial evidence.

### Immediate Presence

" ' "Presence depends upon the circumstances of each case and implies an area with no metes and bounds" ' and 'immediate' has been defined as ' "Being near at hand; not far apart or distant." ' [Citations.]" (*People* v. *Risenhoover* (1968) 70 Cal.2d 39, 50 [73 Cal.Rptr. 533, 447 P.2d 925].)

Substantial evidence supports the jury determination on this issue and this court will not disturb its finding.

### Possession

CALJIC No. 9.10 provides, in part: "In order to prove the commission of the crime of robbery, each of the following elements must be proved:

"1. *That a person had possession of property* of some value, however slight." (Italics added.)

Although the word "possession" has several meanings in a variety of legal contexts, the reviewing courts in California have chosen a definition which equates with the word "custody" when considering the crime of robbery.

In *People* v. *Beal* (1934) 3 Cal.App.2d 251 [39 P:2d 504], *People* v. *Quinn* (1947) 77 Cal.App.2d 734 [176 P.2d 404], and *People* v. *Colgain* (1969) 276 Cal.App.2d 118, 130 [80 Cal.Rptr. 659] this court

determined: " 'The crime of robbery is complete when the robber unlawfully and by means of force or fear gains possession of the movable property of another in the presence of its *lawful custodian* and reduces it to his manual possession.' '' (Italics added.)

The following individuals have been designated as victims in a robbery: (1) a purchasing agent in charge of payroll (*People* v. *Clark* (1945) 70 Cal.App.2d 132 [160 P.2d 553]); (2) store clerks (*People* v. *Guerin* (1972) 22 Cal.App.3d 775 [99 Cal.Rptr. 573], disapproved on other grounds); (3) barmaid (*People* v. *Poindexter* (1967) 255 Cal.App.2d 566 [63 Cal.Rptr. 332]); (4) janitors in sole occupation of premises (*People* v. *Downs* (1952) 114 Cal.App.2d 758 [251 P.2d 369]); (5) watchmen (*People* v. *Dean* (1924) 66 Cal.App. 602 [226 P. 943]); and (6) gas station attendants (*People* v. *Arline* (1970) 13 Cal.App.3d 200 [91 Cal.Rptr. 520]). In these cases, the courts have found the victims were responsible for protecting and preserving the property taken.

The People provided no evidence that either Mr. or Mrs. Lopes physically possessed the items taken. The record indicates each parent denied knowledge of the marijuana and neither was questioned about the $1,000 or the shoulder bag. The only evidence in the record to support a finding of possession is the fact Mr. and Mrs. Lopes owned and lived in the residence. The jury determined the parents possessed these personal items of their adult son for purposes of the robbery statute and were therefore appropriately designated as victims of the robbery. Clearly, if those individuals enumerated in the paragraph above were responsible for the protection and preservation of the property entrusted to them, parents have at least the same responsibility to protect goods belonging to their son who resides with them in their home. We hold there is substantial evidence to uphold this determination.

■ We turn to Gordon's contention that only a single robbery occurred. In *People* v. *Ramos* (1982) 30 Cal.3d 553 [180 Cal.Rptr. 266, 639 P.2d 908], the California Supreme Court found (at p. 589) "if force or fear is applied to two victims in joint possession of property, two convictions of robbery are proper."

In this case, the jury found the parents were in joint possession of their son's property and the facts support a finding that each was placed in fear when threatened by the gun. Both Mr. and Mrs. Lopes were robbed and the jury properly convicted Gordon of robbery in counts I and II.

## THE COURT DID NOT ERR BY NOT INSTRUCTING
### ON LESSER INCLUDED OFFENSES

██ Trial counsel did not request any instructions on lesser included offenses. Nonetheless, "[i]t is settled that in criminal cases, even in the absence of a request, the trial court must instruct on the general principles of law relevant to the issues raised by the evidence. [Citations.] The general principles of law governing the case are those principles closely and openly connected with the facts before the court, and which are necessary for the jury's understanding of the case." (*People* v. *St. Martin* (1970) 1 Cal.3d 524, 531 [83 Cal.Rptr. 166, 463 P.2d 390].)

Gordon testified concerning his whereabouts from 8 a.m. until 10 p.m. on August 1, 1980. His itinerary did not include a stop at the home of Mr. and Mrs. Lopes. He testified he had been to the Lopes' residence on July 30, 1980, to buy drugs. At the time he entered Anthony's room and looked through an atlas. He opined his fingerprints on the atlas and his shoe print in the dirt outside the home resulted from this July 30 visit.

Counsel argued Mr. and Mrs. Lopes mistakenly identified Gordon at trial. Counsel did not present evidence or argue that Gordon was present, but not involved in the crime. This indicates a tactical decision by Gordon not to pursue a theory which could support a conviction of a lesser included offense.

"Where a defendant denies complicity, an instruction on a lesser offense is not only unnecessary but is erroneous because not pertinent. (*People* v. *Garcia* (1967) 250 Cal.App.2d 15, 17. . . .)" (*People* v. *Hoze* (1971) 16 Cal.App.3d 671, 674 [94 Cal.Rptr. 360].) " '[I]t has long been settled that the trial court need not, even if requested, instruct the jury on the existence and definition of a lesser and included offense if the evidence was such that the defendant, if guilty at all, was guilty of something beyond the lesser offense.' [Citations.] An example of a situation in which the evidence will not support a finding of guilt of the lesser offense is a case in which the defendant denies complicity. [Citations.]" (*People* v. *Groce* (1971) 18 Cal.App.3d 292, 295 [95 Cal.Rptr. 688].)

There was no error in not instructing on lesser included offenses.

## THE COURT DID NOT ERR IN NOT INSTRUCTING *Sua Sponte* REGARDING CALJIC NO. 2.02 AND DEBT COLLECTION

### A. CALJIC No. 2.02

CALJIC No. 2.02 is entitled "Sufficiency of Circumstantial Evidence to Prove Specific Intent."

The specific intent which must be proved in a robbery is the intent to permanently deprive the owner of his property. In this case, Joseph Lopes testified Gordon told him, "Man lay [*sic*] on that floor. This is a holdup." This evidence supports only one inference: Mr. Gordon was there to steal. Under such circumstances, it was unnecessary to instruct *sua sponte* on CALJIC No. 2.02 (*People* v. *Morrisson* (1979) 92 Cal.App.3d 787, 791-794 [155 Cal.Rptr. 152]).

### B. Debt Collection Defense

Lopes testified Gordon said to Mrs. Lopes, "Lady that's on account of your fucking son that we are here. Your son owes us a lot of fucking money." Gordon denied any involvement with the crime. "[T]he duty to give instructions, *sua sponte,* on particular defenses and their relevance to the charged offense arises only if it appears that the defendant is relying on such a defense, or if there is substantial evidence supportive of such a defense and the defense is not inconsistent with the defendant's theory of the case." (*People* v. *Sedeno* (1974) 10 Cal.3d 703, 716 [112 Cal.Rptr. 1, 518 P.2d 913].)

In this case, there was no *sua sponte* requirement to give instructions concerning the theory of debt collection as a defense. Gordon did not rely on such a defense at trial and the instruction requested on appeal is clearly inconsistent with Gordon's theory of the case.

### GORDON RECEIVED EFFECTIVE ASSISTANCE OF COUNSEL

Gordon complains trial counsel seriously prejudiced him in the following colloquy with the court: "THE COURT: Well maybe we ought to discuss this outside the presence of the jury. You have a stipulation that you had a valid search.

"MR. GARCIA: Parole search." The jury was then excused.

Gordon also asserts error because counsel failed to object to a question asked Detective Mercer whether the revolver found in Gordon's

residence was loaded. "[T]he burden of proving a claim of inadequate trial assistance is on the appellant. [Citation.] Thus, appellant must show that trial counsel failed to act in a manner to be expected of reasonably competent attorneys acting as diligent advocates. In addition, appellant must establish that counsel's acts or omissions resulted in the withdrawal of a potentially meritorious defense." (*People* v. *Pope* (1979) 23 Cal.3d 412, 425 [152 Cal.Rptr. 732, 590 P.2d 859, 2 A.L.R.4th 1].)

The remark concerning "parole search" was an error by counsel. Counsel had worked diligently to keep the parole status of his client from the jury and lost the advantage by an unfortunate slip of the tongue. Despite this mistake, Gordon has failed to demonstrate such error resulted in the withdrawal of a potentially meritorious defense.

Gordon's claim concerning counsel's failure to object regarding the loaded weapon is without merit. It meets neither the test of an incompetent act or omission, nor the requirement that a potentially meritorious defense has been withdrawn. " 'The choice of when to object and when to allow the evidence to come in as offered is inherently a matter of trial tactics. Ordinarily the tactical decisions of trial counsel will not be reviewed with the hindsight of an appellate court. [Citations.]' " (*People* v. *Jenkins* (1975) 13 Cal.3d 749, 755 [119 Cal.Rptr. 705, 532 P.2d 857].)

## There Was No Prosecutorial Misconduct

■ Gordon claims prosecutorial misconduct for a statement made by the prosecutor during closing argument. The comment in question is, "Ladies and gentlemen, we have a carefully contrived defense to weave their way through the evidence, to distort the truth in order to gain an acquittal on the robbery charges." Gordon contends this statement falls within the pronouncement of the court in *People* v. *Bain* (1971) 5 Cal.3d 839, at page 847 [97 Cal.Rptr. 684, 489 P.2d 564], that "[t]he unsupported implication by the prosecutor that defense counsel fabricated a defense constitutes misconduct." In *Bain*, there was a timely objection to the prosecutor's statement (*id.* at p. 845). Gordon made no objection at trial.

The statement by the prosecutor is clearly not so egregious that a timely objection and admonition would not have cured any resulting harm (*People* v. *Green* (1980) 27 Cal.3d 1, 34 [164 Cal.Rptr. 1, 609 P.2d 468]). Indeed, it seems unlikely the jury would have inferred the statement as an accusation that defense counsel fabricated a defense. The

statement implies the testimony of the defendant was deceptive. This is within the bounds of fair comment. No error has occurred.

Judgment affirmed.

Brown (Gerald), P. J., and Work, J., concurred.

A petition for a rehearing was denied October 26, 1982, and appellant's petition for a hearing by the Supreme Court was denied December 29, 1982.