[No. C057666. Third Dist. May 25, 2010.]

THE PEOPLE, Plaintiff and Respondent, v.
JOSHUA WAYNE WEDDLES, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION**]**

** Pursuant to California Rules of Court, rule 8.1110, this opinion is certified for publication with the exception of parts II, III, IV and I of the Discussion.

## COUNSEL

Susan K. Shaler, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette and Michael P. Farrell, Assistant Attorneys General, Stephen G. Herndon and David A. Rhodes, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**SIMS, Acting P. J.**—In this robbery case, we must answer the following question: "Am I my brother's keeper?" The answer is, "yes."

A jury convicted defendant Joshua Wayne Weddles of two counts of first degree residential robbery (Pen. Code, § 211—counts 1 and 2),[1] first degree burglary (§ 459—count 4), making a criminal threat (§ 422—count 5), and assault with force likely to produce great bodily injury (§ 245, subd. (a)(1)—count 6). The jury also found defendant personally used a firearm as to both robbery counts. (§ 12022.53, subd. (b).)

---

[1] Undesignated statutory references are to the Penal Code.

Sentenced to an aggregate term of 27 years four months in state prison, defendant appeals, claiming (1) insufficient evidence supports his conviction for robbery of Armando Navarette (Armando), (2) insufficient evidence supports his conviction of making a criminal threat, (3) the trial court erred by failing to give, sua sponte, a unanimity instruction as to the criminal threat count, and (4) the trial court committed multiple sentencing errors.

In the published portion of the opinion, we find that sufficient evidence supports defendant's convictions for the robbery of Armando, who was forced at gunpoint to turn over to the robbers some $1,500 that belonged to Armando's brother, Alex Navarette (Alex). In the unpublished portion of the opinion, we find that the trial court committed two sentencing errors. However, we find no other prejudicial error.[2] Accordingly, we affirm the convictions and remand the case for correction of the sentencing errors.

## FACTUAL BACKGROUND

Paris Brown, testifying on behalf of the prosecution in hopes of receiving a lighter sentence for himself, explained that he happened to run into defendant at a liquor store in Stockton, California, on the evening of January 19, 2007. The two men decided to get some marijuana to share. A third person—whom they knew as a crack cocaine addict but not by name—came along. They walked several blocks to an apartment on North Commerce Street, where Brown had previously purchased marijuana.

When the men arrived at the apartment around 11:30 p.m., Alex was inside with his girlfriend, Savannah Mowry (Savannah), their two-year-old son, and Alex's brother, Armando. Savannah and her son were asleep on a loveseat while Armando was asleep on another couch.

Alex heard a soft knock on the door. Not expecting anyone at that hour, Alex partially opened the door and saw defendant pointing a gun at his face. Alex attempted to grab the gun, but defendant warned him, "Don't fight, . . . you're playing with a loaded gun." Defendant, Brown, and the third man forced their way into the apartment, knocking Alex to the ground.

As defendant subdued Alex and held the gun to his head, Brown and the other individual ran toward Armando on the couch and started punching him, yelling, "Where's the money, where's the money . . . . We'll shoot you,

---

[2] We conclude that the trial court erroneously failed to give a jury unanimity instruction but that the error is harmless.

we'll pop you." Armando was then taken to the bedroom by Brown and the other assailant. After showing them a container where Alex and Savannah's money was kept, Armando was taken back into the living room.

Defendant and one of his confederates then took Alex into the back bedroom. When Alex came out of the room, his lip was bleeding; he had been hit in the mouth with a fist and struck on the head with a hard object.

The three assailants fled the apartment with $1,500 in cash, two Ziploc bags containing marijuana, and several small items—including Armando's car keys. Before they departed, defendant told Alex: "I better not see this shit in the newspaper, don't call the police. We do this shit bare-faced. I'm [something unintelligible] bandit."

After the incident, Alex, Savannah, and Armando were "just kind of shaken and scared at the same time." Out of fear, they moved because they "didn't feel safe in the neighborhood any longer."

## DISCUSSION

## I

### Sufficiency of the Evidence—Robbery of Armando

Defendant contends the evidence was insufficient to prove that Armando was a victim of robbery. Defendant argues that Armando had no interest in or possession of the $1,500 that Alex kept hidden in his bedroom. We reject the argument.

### A. Standard of Review

In assessing claims of insufficient evidence " 'we review the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. (*People v. Johnson* (1980) 26 Cal.3d 557, 578 [162 Cal.Rptr. 431, 606 P.2d 738]; see also *Jackson v. Virginia* (1979) 443 U.S. 307, 317–320 [61 L.Ed.2d 560, 99 S.Ct. 2781].)' " (*People v. Abilez* (2007) 41 Cal.4th 472, 504 [61 Cal.Rptr.3d 526, 161 P.3d 58].)

## B. Evidence Presented at Trial

Immediately after entering the apartment, two of the assailants rushed at Armando. Armando scuffled with the assailants until defendant ordered him to stop. Defendant threatened to shoot Alex in the head if Armando continued to resist.

The assailants demanded to know where the money was kept. Armando testified that the assailants "just kept repeating, 'Where's the money . . . where's the money?' " and, " 'We'll shoot you, we'll pop you.' " While defendant held a gun to Alex's head, Alex instructed Armando to show the assailants where the money was kept in the bedroom. Armando already knew that Alex kept his money in a decorative jar in the bedroom. He testified, "I knew where my brother was holding the money 'cause I knew—because I knew where he was saving his money at. And I knew what—you know, where he put it, and so my brother's, 'Man, like just give it to him, you know,' 'cause the baby was there."

Armando led two of the assailants to the bedroom, where he pointed out the jar. The robbers took $1,500 in cash from the hiding place. The assailants then ransacked the apartment and left after taking a few small items.

## C. Robbery

Section 211 defines robbery as "the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear."

As we explained in *People v. Ugalino* (2009) 174 Cal.App.4th 1060, 1064–1065 [94 Cal.Rptr.3d 858], "California follows 'the traditional approach that limits victims of robbery to those persons in either actual or constructive possession of the property taken.' (*People v. Nguyen* (2000) 24 Cal.4th 756, 764 [102 Cal.Rptr.2d 548, 14 P.3d 221].) ' "Robbery is an offense against the person . . . ." ' (*People v. Miller* (1977) 18 Cal.3d 873, 880 [135 Cal.Rptr. 654, 558 P.2d 552].) Accordingly, a victim can be any person who shares 'some type of "special relationship" with the owner of the property sufficient to demonstrate that the victim had authority or responsibility to protect the stolen property on behalf of the owner.' (*People v. Scott* (2009) 45 Cal.4th 743, 753 [89 Cal.Rptr.3d 213, 200 P.3d 837].) Persons with

just such a special relationship include business employees and parents living with their adult children. (*Scott, supra,* 45 Cal.4th at pp. 752, 753–754; see *People v. Jones* (2000) 82 Cal.App.4th 485, 491 [98 Cal.Rptr.2d 329].)"

Defendant does not dispute that property was taken from the apartment or that force and fear were employed against Armando. Instead, defendant argues for reversal of the conviction for robbery of Armando by arguing that "Armando had no possession of or interest in the money" belonging to Alex.

However, Armando had a special relationship with his brother that endowed Armando with constructive possession of his brother's cash. On this point, we find instructive the case of *People v. Gordon* (1982) 136 Cal.App.3d 519 [186 Cal.Rptr. 373] (*Gordon*). *Gordon* involved robbers who entered the Lopeses' home, threatened them at gunpoint, and took a bag containing cash and marijuana from their adult son's room. (*Id.* at pp. 523–524.) "The only evidence in the record to support a finding of possession is the fact Mr. and Mrs. Lopes owned and lived in the residence." (*Id.* at p. 529.) Even though the evidence indicated the Lopeses had no prior knowledge of the stolen items, the convictions for robbery were affirmed. (*Ibid.*)

The *Gordon* court explained that persons responsible for protecting and preserving property are properly deemed to be robbery victims. Such persons have been held to include a purchasing agent, store clerks, a barmaid, janitors, watchmen, and gas station attendants. (*People v. Gordon, supra,* 136 Cal.App.3d at p. 529.) Reasoning that if such persons "were responsible for the protection and preservation of the property entrusted to them, parents have at least the same responsibility to protect goods belonging to their son who resides with them in their home." (*Ibid.*) Consequently, the parents were victims of robbery. (*Ibid.*)

As in *Gordon*, the robbery conviction in this case may be affirmed based on constructive possession of an immediate family member's property. We reject as untenable defendant's argument that Armando had no concern about whether his brother's savings were pilfered from the apartment that he regularly visited. Armando's close familial relationship with the owner of the property, his regular presence at the apartment, and knowledge of where the property was hidden by Alex establish that Armando had constructive possession of the cash.

Defendant misplaces his reliance on our decision in *People v. Ugalino, supra*, 174 Cal.App.4th 1060. In *Ugalino*, Joshua Johnson and Jessie Rider shared a two-bedroom apartment with several other people. (*Id.* at p. 1062.) The defendant and his accomplice entered the apartment on pretense of buying marijuana from Johnson, a drug dealer. Once inside, the defendant and his cohort drew guns on Johnson, and the defendant announced, "you're getting jacked." (*Id.* at pp. 1062–1063.) Johnson stuffed the drugs that he had been holding into his pants and fled the apartment. The assailants followed Johnson in pursuit. (*Id.* at p. 1063.) On appeal, we reversed the defendant's conviction for attempted robbery of Rider. (*Id.* at p. 1065.)

In reversing the conviction, we noted that "Rider did not have actual possession of the marijuana, and Johnson stored the marijuana locked in a safe in his bedroom." (*People v. Ugalino, supra*, 174 Cal.App.4th at p. 1065.) Rider did not have access to the safe. "In fact, Rider did not even have a key to the apartment, most of the time coming and going only when someone else was home." (*Ibid.*) Moreover, "there was no evidence [Johnson] expected Rider to assist him . . ." in protecting his belongings. (*Ibid.*) Lacking any connection to Johnson other than sharing an apartment, we held that Rider could not be deemed to have constructive possession of the personal property locked away by Johnson. (*Ibid.*)

Although Armando did not live in Alex's apartment, he had a close connection to Alex. Not only was Armando his brother, but Armando was also sufficiently close to Alex that he knew where Alex kept his hidden savings. Armando had a special relationship with Alex that conferred him with constructive possession of Alex's personal property in the apartment.

■ The evidence sufficed to convict defendant of robbery against Armando because he was robbed of property over which he had constructive possession.

### II–V*

· · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · ·

*See footnote, *ante*, page 1365.

## DISPOSITION

Defendant's 10-year firearm enhancement on count 2 is corrected to reflect a term of three years four months. Count 4 is ordered stayed, such stay to become permanent upon completion of the sentence for robbery. The matter is remanded to the trial court for resentencing in light of the modifications set forth above. In all other respects, the judgment is affirmed. Following resentencing, the court shall forward a certified copy of the amended abstract to the Department of Corrections and Rehabilitation.

Nicholson, J., and Butz, J., concurred.

Appellant's petition for review by the Supreme Court was denied September 15, 2010, S183920.