Filed 10/22/14  P. v. Summerville CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>RANDY SUMMERVILLE, et al.,<br><br>    Defendants and Appellants. | B248476<br><br>(Los Angeles County<br>Super. Ct. No. TA123921) |

APPEALS from a judgment of the Superior Court of Los Angeles County, Allen J. Webster, Jr., Judge.  Modified and affirmed as to Defendant Summerville.  Affirmed as to Defendant Chaffold.

Melanie K. Dorian, under appointment by the Court of Appeal, for Defendant and Appellant Summerville.

Jolene Larimore, under appointment by the Court of Appeal, for Defendant and Appellant Chaffold.

Kamala D. Harris, Attorney General, Lance E. Winters, Assistant Attorney General, Mary Sanchez and Taylor Nguyen, Deputy Attorneys General, for Plaintiff and Respondent.

_____

In a joint trial of three defendants, the jury convicted Randy Summerville on seven counts pertaining to a May 5, 2011 robbery and kidnapping at the home of Miguel Hernandez, and found personal firearm use and criminal street gang allegations to be true (counts 3 to 9). The jury convicted Demarco Chaffold of a May 11, 2011 robbery of Jose Castellon, and found the personal firearm use allegation to be true, but rejected the criminal street gang allegation (count 11). The jury acquitted Traynell Coleman of all charges.

In these appeals by Summerville and Chaffold, we modify Summerville's sentence pursuant to Penal Code section 654.[1] The judgment is affirmed as to Chaffold, and affirmed, as modified, as to Summerville.

## PROCEDURAL BACKGROUND

In April and May 2011, the following incidents occurred near the Jordan Downs Housing Projects in Los Angeles: (1) the April 17, 2011 robbery of Ervin Bromell (counts 1 and 2); (2) the May 5, 2011 robbery and kidnapping at the Hernandez residence (counts 3 through 10);[2] (3) the May 11, 2011 robbery of Castellon (count 11); and (4) the May 15, 2011 attempted murder of Fernando Aviles (counts 12 to 15). The prosecution filed a 15-count information that charged Summerville, Chaffold, and Coleman with one or more of these incidents.[3]

---

[1] All further statutory references are to the Penal Code.

[2] In addition to Hernandez, the other victims in the May 5 incident were George Hernandez (Hernandez's son) and William Soto (the father of Hernandez's granddaughter). Because Hernandez and his son share the same last name, we refer to the son by his first name; no disrespect is intended.

[3] The information contained the following counts:
Count 1 against Summerville and Coleman: Second degree robbery of Bromell on April 17, 2011 (§ 211).
Count 2 against Coleman: Possession of a firearm by a felon on April 17, 2011 (§ 12021, subd. (a)(1)).

2

Summerville was charged in connection with three of the incidents, and convicted as to one.  The jury acquitted him of the April 17 robbery of Bromell (count 1), and failed to reach a verdict as to the May 11 robbery of Castellon (count 11).  But it convicted him of the May 5 robbery and kidnapping at the Hernandez residence (counts 3 to 9),[4] and found personal firearm use and criminal street gang allegations to be true.

Chaffold was charged in connection with two of the incidents, and convicted as to one.  He was charged with the May 15 attempted murder of Aviles (counts 12-14), but

---

Count 3 against Summerville:  Second degree robbery of Hernandez on May 5, 2011 (§ 211).

Count 4 against Summerville:  Kidnapping of Hernandez to commit another crime on May 5, 2011 (§ 209, subd. (b)(1)).

Count 5 against Summerville:  Kidnapping of George to commit another crime on May 5, 2011 (§ 209, subd. (b)(1)).

Count 6 against Summerville:  First degree burglary of an inhabited dwelling house (the Hernandez residence) with intent to commit larceny on May 5, 2011 (§ 459).

Count 7 against Summerville:  First degree residential robbery of Hernandez on May 5, 2011 (§ 211).

Count 8 against Summerville:  First degree residential robbery of George on May 5, 2011 (§ 211).

Count 9 against Summerville:  First degree residential robbery of Soto on May 5, 2011 (§ 211).

Count 10 against Summerville:  Unlawful driving or taking of a vehicle owned by Hernandez on May 5, 2011 (Veh. Code, § 10851, subd. (a)).

Count 11 against Summerville and Chaffold:  Second degree robbery of Castellon on May 11, 2011 (§ 211).

Count 12 against Coleman (and dismissed at trial as to Chaffold):  Attempted willful, deliberate, and premeditated murder of Aviles on May 15, 2011 (§§ 664/187, subd. (a)).

Count 13 against Coleman (dismissed at trial as to Chaffold):  Shooting at an occupied motor vehicle on May 15, 2011 (§ 246).

Count 14 against Coleman (dismissed at trial as to Chaffold):  Attempted carjacking of Aviles on May 15, 2011 (§§ 664/215, subd. (a)).

Count 15 against Coleman:  Possession of a firearm by a felon on May 15, 2011 (§ 12021, subd. (a)(1)).

[4] The jury acquitted Summerville of count 10, unlawful driving or taking of Hernandez's vehicle.

3

those allegations were dismissed as to him at trial. He was convicted of the May 11 Castellon robbery (count 11), with a personal firearm use finding. The jury rejected the criminal street gang allegation.[5]

Summerville received a sentence of 25 years to life, with a minimum parole eligibility date of 15 years. Chaffold received a sentence of 13 years. Both timely appealed from the judgment. Facts relevant to their appeals are discussed below.

## DISCUSSION

### I

Summerville was convicted on counts 3 through 9 concerning the May 5 robbery and kidnapping at the Hernandez residence. On appeal, he challenges his second degree robbery (count 3) and first degree residential robbery (count 7) convictions as to Hernandez, and first degree residential robbery conviction as to Soto (count 9). He also contends he was sentenced in violation of section 654.

*A. The May 5 Incident*

At about 7:00 a.m. on May 5, 2011, Hernandez and his son George were getting into Hernandez's truck in front of their house when they were approached by two young men. The taller man (later identified as Summerville) was carrying a revolver. He ordered George out of the truck and took his music player. The shorter man took Hernandez's wallet, which contained $20.

The shorter man said, "Let's walk inside the house and see what's in there." Hernandez and George were forced to walk 30 or 40 feet to the front door of their house. George rang the doorbell. Soto (the father of Hernandez's granddaughter) opened the door. The taller man said, "Don't move or I will bust the cap." George understood this to mean I will "shoot you."

_____

[5] Coleman was charged with two of the incidents, and acquitted of both. The jury acquitted him of the April 17 robbery of Bromell (counts 1 and 2) and the May 15 attempted murder of Aviles (counts 12 through 15). Coleman is not a party to this appeal.

4

Hernandez, George, Soto, and Soto's daughter were taken to a bedroom and made to sit on the floor. George's cousin, Angel Hernandez, who was sleeping in the garage, was also brought to the bedroom. During a 30-minute period, the men took turns holding the gun and watching the victims, and going through the house and removing electronics and other valuables. At one point, Summerville told George to unplug the computer or he would "pop you on Geo" (a reference to a deceased Grape Street gang member).

After taking what they wanted, the men left the house. Hernandez went outside and discovered that his truck was missing. He called the police and reported the incident. His truck was later recovered in an alley.

Summerville's fingerprint was found inside the home. Hernandez and George identified Summerville during a photographic lineup and at the preliminary hearing. George identified Summerville at trial, but Hernandez did not.

Summerville was convicted on counts 3 to 9 for second degree robbery of Hernandez (count 3); kidnapping for robbery of Hernandez (count 4); kidnapping for robbery of George (count 5); first degree burglary (count 6); first degree residential robbery of Hernandez (count 7); first degree residential robbery of George (count 8); and first degree residential robbery of Soto (count 9). The jury acquitted him of unlawful driving or taking of Hernandez's vehicle (count 10). The jury found criminal street gang and personal firearm use allegations to be true.

*B. Counts 3 and 7 Are Supported by Substantial Evidence*

On appeal, Summerville challenges his convictions of both second degree robbery and first degree residential robbery of Hernandez (counts 3 and 7), which he contends involved a single indivisible course of conduct for which only one conviction is permitted. We disagree.

Summerville relies on *People v. Irvin* (1991) 230 Cal.App.3d 180 (*Irvin*), in which the driver of a car was robbed of her purse and car during a single continuous event. The defendant, who was convicted of robbery as to the purse and grand theft as to the automobile, argued the takings constituted a single offense. The appellate court agreed and reversed the grand theft conviction, concluding the robbery of the purse necessarily

5

included the theft of the vehicle:  "We find no authority for the proposition that a robber may be charged with and convicted of a separate robbery, or an additional offense of grand theft, because he or she took more than one item from a solitary victim during a single course of conduct."  (*Id.* at p. 185.)

In *People v. Ortega* (1998) 19 Cal.4th 686, the Supreme Court reached a similar conclusion, stating that "a defendant may be convicted of both carjacking and robbery, or of both carjacking and theft, but may not be convicted of both robbery and theft based upon the commission of a single act or course of conduct."  (*Id.* at p. 690.)  The court concluded that the critical issue was whether the robbery and theft "were based upon the same conduct."  (*Id.* at p. 699.)  The rule is that "'[w]hen a defendant steals multiple items during the course of an indivisible transaction involving a single victim, he commits only one robbery or theft notwithstanding the number of items he steals.' (*People v. Brito* (1991) 232 Cal.App.3d 316, 326, fn. 8.)"  (*Ortega*, *supra*, 19 Cal.4th at p. 699.)

This case is distinguishable because the robbery of the wallet and the robbery of household items were separated in time and place by the intervening crime of kidnapping for robbery (§ 209, subd. (b)(1)).  Hernandez's wallet was taken while he was standing in front of his house.  He was then kidnapped and moved indoors to a bedroom where he was kept under armed guard with additional family members—his granddaughter, her father Soto, and George's cousin Angel—while the intruders made off with electronics, cash, and other items.  The intervening kidnapping, sequestering, and additional victims substantially increased the risk of physical or psychological harm beyond that necessarily present in a robbery.[6]  (*People v. Nguyen* (2000) 22 Cal.4th 872, 885–886.)

The facts of this case are similar to those in *People v. Green* (1996) 50 Cal.App.4th 1076 (*Green*), which also involved a robbery, followed by a kidnapping for sexual purposes, a sexual assault, and another robbery of the same victim.  In that case,

---

[6] Summerville does not challenge his convictions of kidnapping for robbery (counts 4 (Hernandez) and 5 (George)).

6

the defendant stole the victim's purse before he kidnapped her for sexual purposes. He then sexually assaulted her in a secluded area. When he finally released the victim, he stole her vehicle. As in this case, the defendant in *Green* argued on appeal that the initial theft of the purse and the subsequent theft of the vehicle constituted a single offense. The appellate court disagreed, stating that "[b]ecause the carjacking was thus separated in time and place from the initial robbery of [the victim's] purse and was interrupted by the sexual attack . . . , the record contains sufficient evidence to support the trial court's explicit finding that the taking of the purse and the taking of the vehicle were separate incidents which merited separate and additional punishment." (*Id.* at p. 1085.)

The same is true here. As in *Green*, there is substantial evidence of two separate robberies. The initial robbery was separated in time and place from the subsequent robbery by the intervening crime of kidnapping, the addition of other family members, and the holding of the victims under armed guard in an enclosed room. The initial robbery was interrupted by these intervening events, which justified a finding that the thefts of the wallet (count 3) and household items (count 7) constituted separate incidents.[7]

### C. Count 9 Is Supported by Substantial Evidence

Summerville challenges his conviction of residential robbery of Soto (count 9), arguing that Soto did not have actual or constructive possession of any property in the Hernandez residence. We disagree, and find the evidence supports Summerville's conviction.

"California follows 'the traditional approach that limits victims of robbery to those persons in either actual or constructive possession of the property taken.' (*People v. Nguyen* (2000) 24 Cal.4th 756, 764.) '"Robbery is an offense against the person[.]"' (*People v. Miller* (1977) 18 Cal.3d 873, 880.) Accordingly, a victim can be any person

---

[7] Summerville's reliance on burglary cases such as *People v. Woods* (1998) 65 Cal.App.4th 345; *People v. Nunley* (1985) 168 Cal.App.3d 225, and *In re Christopher J.* (1980) 102 Cal.App.3d 76 is misplaced. The analysis of what constitutes an inhabited dwelling for purposes of first degree burglary is not relevant to this discussion.

who shares 'some type of "special relationship" with the owner of the property sufficient to demonstrate that the victim had authority or responsibility to protect the stolen property on behalf of the owner.' (*People v. Scott* (2009) 45 Cal.4th 743, 753.) Persons with just such a special relationship include business employees and parents living with their adult children. (*Scott*, *supra*, 45 Cal.4th at pp. 752, 753–754 . . . .)" (*People v. Ugalino* (2009) 174 Cal.App.4th 1060, 1064–1065.)

In *People v. Weddles* (2010) 184 Cal.App.4th 1365, the issue was whether the evidence supported a finding that Armando was a victim of a residential robbery at his brother Alex's apartment. The court held that Armando was a victim of residential robbery, stating: "We reject as untenable defendant's argument that Armando had no concern about whether his brother's savings were pilfered from the apartment that he regularly visited. Armando's close familial relationship with the owner of the property, his regular presence at the apartment, and knowledge of where the property was hidden by Alex establish that Armando had constructive possession of the cash." (*Id.* at p. 1370.)

In this case, the question is whether Soto was a victim of residential robbery at the home of his daughter's grandfather. The fact that Soto and his daughter were waiting at Hernandez's house while he drove his son to school indicates that Soto was a trusted family member. The evidence supports a finding of a close familial relationship that gave Soto the implied authority or responsibility to protect Hernandez's home and property. The evidence therefore was sufficient to support the jury's finding that Soto "was robbed of property over which he had constructive possession." (*People v. Weddles*, *supra*, 184 Cal.App.4th at p. 1371.)

### D. *Section 654*

On count 4, kidnapping for robbery of Hernandez, Summerville received a base term of 25 years to life, with a minimum parole eligibility date of 15 years.[8] The court

---

[8] The sentence on count 4 consisted of a life term with the possibility of parole (§ 209, subd. (b)(1)), a minimum parole eligibility date of 15 years for the gang allegation (§ 186.22, subd. (b)(5)), and a 10-year firearm enhancement (§ 12022.53, subd. (b)).

imposed concurrent sentences on count 3 (second degree robbery of Hernandez), count 5 (kidnapping for robbery of George), count 7 (residential robbery of Hernandez), count 8 (residential robbery of George), and count 9 (residential robbery of Soto).[9] The court stayed the sentence on count 6, first degree burglary, under section 654.[10]

On appeal, Summerville contends the sentences on counts 7 and 8 should have been stayed under section 654. He argues that section 654 applies because the kidnappings for robbery (counts 4 and 5) and the residential robberies (counts 7 and 8) arose out of a single occurrence and were committed for the same purpose or objective— to rob each victim of the valuables in the house. The Attorney General concedes the issue.

We conclude that where, as here, the evidence shows that the kidnappings for robbery (counts 4 (Hernandez) and 5 (George)) and the residential robberies of the same victims (counts 7 (Hernandez) and 8 (George)) arose out of a single occurrence and were committed for the same purpose or objective, section 654 prohibits multiple punishments.

---

[9] On count 3, second degree robbery, the court imposed the midterm of three years (§ 213, subd. (a)(2)), plus a 10-year gang enhancement (§ 186.22, subd. (b)(1)(C), and a 10-year firearm enhancement (§ 12022.53, subd. (b)), for a total concurrent sentence of 23 years.

On count 5, kidnapping for robbery of George, the court imposed a concurrent sentence of 25 years to life.

On each of counts 7, 8, and 9, first degree residential robbery, the court imposed the midterm of four years (§ 213, subd. (a)(1)(B)), with a 10-year gang enhancement (§ 186.22, subd. (b)(1)(C)), and a 10-year firearm enhancement (§ 12022.53, subd. (b)), for a total concurrent sentence on each count of 24 years.

[10] Section 654 provides in relevant part that an "act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision." "'Section 654 bars multiple punishments for separate offenses arising out of a single occurrence where all of the offences were incident to one objective. [Citation.]' [Citation.]" (*People v. McKinzie* (2012) 54 Cal.4th 1302, 1368.)

(*People v. McKinzie*, *supra*, 54 Cal.4th at p. 1368.) The sentences on counts 7 and 8 must be stayed pursuant to section 654.

We disagree, however, with Summerville's contention that the concurrent sentence on count 3, second degree robbery of Hernandez, also must be stayed under section 654. For the reasons previously discussed, the initial taking of the wallet (count 3) and the subsequent taking of items inside the house (count 7) constituted separate incidents. (*Green*, *supra*, 50 Cal.App.4th at p. 1085.)

*E. The Amended Abstract of Judgment*

The superior court filed an amended abstract of judgment as to Summerville on November 25, 2013. On appeal, Summerville seeks a further correction of that amended abstract, to delete the 10-year gang enhancements on counts 4 and 5, which the court never imposed. The Attorney General agrees that the amended abstract must "be corrected to delete the gang enhancement as to counts 4 and 5 and reflect that Summerville is subject to a minimum 15-year parole eligibility date on count 4." The parties are correct.

On count 4, the court imposed the 15-year minimum term in section 186.22, subdivision (b)(5), which is an alternate penalty for the underlying felony. (*Robert L. v. Superior Court* (2003) 30 Cal.4th 894, 900.) Where the court imposes the 15-year minimum term under section 186.22, subdivision (b)(5), the 10-year gang enhancement does not apply. (*People v. Harper* (2003) 109 Cal.App.4th 520.) The 10-year enhancements on counts 4 and 5 therefore must be deleted from the amended abstract of judgment.

II

The jury convicted Chaffold of the May 11 robbery of Castellon (count 11), and found the personal gun use allegation to be true. On appeal, he argues his conviction on count 11 must be reversed because of instructional errors related to the dismissal of counts 12 through 14, the attempted murder of Aviles. We conclude that Chaffold has not established prejudicial error.

10

*A. The Castellon Robbery*

On May 11, 2011, Jose Castellon was in the alley behind his house. He was approached by three men. One had a gun. The men robbed Castellon of his wallet and ran away. Castellon reported the crime to police.

Castellon identified Chaffold in a photographic lineup, at the preliminary hearing, and at trial. His stepsons, Andres Lomeli and Anthony Lomeli, who witnessed the robbery, identified Chaffold in a photographic lineup. Andres Lomeli also identified Chaffold at trial.

The jury convicted Chaffold of the May 11 robbery of Castellon (count 11). It found the personal gun use allegation to be true, but rejected the criminal street gang allegation.

*B. The Aviles Attempted Murder*

On May 15, Aviles was shot during an attempted carjacking. During the investigation, Aviles identified Coleman as one of the three assailants. At the preliminary hearing, Aviles also identified Chaffold. This led to the filing of a new information that charged Chaffold with the May 15 incident (counts 12-14). Prior to jury selection, Chaffold moved to suppress Aviles's preliminary hearing identification, but the motion was denied.

At trial, Aviles initially stood by his preliminary hearing identification of Chaffold, but his testimony unraveled on cross-examination when he admitted that his prior identification of Chaffold was mistaken. On redirect, Aviles testified that his prior identification of Coleman also was mistaken. He then explained that he was not mistaken, but was intimidated by the "ugly looks" he was receiving from someone in the courtroom.

Following Aviles's testimony, the prosecution informed the court outside the jury's presence that it had presented "all the evidence as to defendant Chaffold" and was "unable to proceed" on counts 12, 13, and 14 against him. The court dismissed counts 12, 13, and14 as to Chaffold, but did not inform the jury of that fact.

11

At the conclusion of trial, the court instructed the jury that "counts 12, 13, and 14 charging defendant Chaffold with attempted willful, deliberate and premeditated murder, shooting at an occupied car, and attempted carjacking, no longer need to be decided in this case." It instructed the jury not to speculate about or consider why it did not have to decide those charges as to Chaffold. Chaffold did not object to those instructions, nor did he request additional instructions as to counts 12, 13, and 14.

### C. Chaffold's Claim of Instructional Error

On appeal, Chaffold seeks a reversal of his conviction on count 11, based on alleged instructional errors concerning counts 12, 13, and 14. He argues that when counts 12, 13, and 14 were dismissed, the trial court should have immediately informed the jury of the dismissal, and immediately instructed the jury to disregard all evidence (and any future evidence) implicating him in the Aviles incident. He also argues that at the end of the trial, the court should have instructed the jury not to consider any evidence regarding the Aviles incident in determining his guilt of the May 11 robbery of Castellon. He contends the omission of these instructions was prejudicial to his defense on count 11.

The record fails to show that Chaffold requested the omitted instructions. "'Generally, a party may not complain on appeal that an instruction correct in law and responsive to the evidence was too general or incomplete unless the party has requested appropriate clarifying or amplifying language.' (*People v. Andrews* (1989) 49 Cal.3d 200, 218.)" (*People v. Hudson* (2006) 38 Cal.4th 1002, 1011–1012.)

Chaffold fails to provide authority for the proposition that the omitted instructions should have been given on the court's own motion. "'It is settled that in criminal cases, even in the absence of a request, the trial court must instruct on the general principles of law relevant to the issues raised by the evidence. [Citations.] The general principles of law governing the case are those principles closely and openly connected with the facts before the court, and which are necessary for the jury's understanding of the case.' (*People v. St. Martin* (1970) 1 Cal.3d 524, 531.)" (*People v. Najera* (2008) 43 Cal.4th 1132, 1136.)

12

The issue is whether the trial court adequately instructed the jury on the general principles of law relevant to the issues raised by the evidence. The jury was instructed in relevant part that "counts 12, 13, and 14 charging defendant Chaffold with attempted willful, deliberate and premeditated murder, shooting at an occupied car, and attempted carjacking, no longer need to be decided in this case." It was also instructed to "decide each charge for each defendant separately," and to not speculate as to why it did not have to decide counts 12, 13, and 14 as to Chaffold.

We do not find, nor does Chaffold argue, that the instructions were erroneous. We believe that a reasonable jury, taking the instructions as a whole, would have understood it was not to consider evidence on the dismissed counts in determining Chaffold's guilt as to the remaining count. It is not reasonably likely the jury misunderstood its duty to not consider or speculate as to why counts 12, 13, and 14 were no longer at issue as to Chaffold. We are not persuaded the jury ignored the instructions and speculated that Chaffold had "pled guilty" to counts 12, 13, and 14. On the contrary, "'[w]e presume jurors 'generally understand and follow instructions.'" (*People v. Myles* (2012) 53 Cal.4th 1181, 1212.)" (*People v. Jackson* (2014) 58 Cal.4th 724, 767, fn. omitted.)

In an effort to show prejudice, Chaffold points to the jury instruction that "[i]n deciding whether the People have proved their case beyond a reasonable doubt, you must impartially compare and consider all the evidence that was received throughout the entire trial." Based on this instruction, he suggests the jury improperly considered evidence that he and Coleman had attempted to kill Aviles "within days of the other charged offense in which it was alleged that [he] used a firearm." He argues that because the attempted murder evidence was inflammatory and appealed to the passion of the jurors, he was wrongly convicted of robbing Castellon.

The jury verdicts, however, do not indicate the jurors had a strong emotional reaction to the evidence. On the contrary, the jury failed to reach a verdict as to Summerville on count 11 (the May 11 robbery of Castellon), and it acquitted him of count 1 (the April 17 robbery of Bromell). It also acquitted Coleman of counts 1 and 2 (the April 17 robbery of Bromell and possession of a firearm by a felon), and of counts

13

12, 13, 14, and 15 (the attempted murder, shooting, attempted carjacking of Aviles, and possession of a firearm by a felon). And it rejected the gang allegation against Chaffold in count 11.

The record supports Chaffold's conviction of the May 11 robbery of Castellon. The jury reasonably relied on the eyewitness trial testimony of Castellon and his stepson who identified Chaffold as one of the perpetrators. A fair reading of the record persuades us the jury was not swayed by passion or prejudice, but gave a full and fair evaluation of the evidence.

Chaffold argues that after counts 12, 13, and 14 were dismissed against him, "the trial continued with jurors believing [he] was charged with the serious offenses involving Aviles," that "[w]itnesses testified regarding the offense," and that witnesses "were cross-examined about the identifications of the perpetrators." The record shows, however, that additional evidence was presented against Coleman, who was still a defendant as to the Aviles incident, but not against Chaffold. Although Los Angeles Police Department Officer Ryan Moreno testified about the photographic lineups that were shown to Aviles, Moreno was careful to explain that Chaffold was not included in any of those photographs.

In our view, it is not reasonably probable that the jury would have reached a different result on count 11 if it had been instructed immediately upon the dismissal of counts 12, 13, and 14 to disregard all evidence (and future evidence) implicating Chaffold in the Aviles incident, and to not consider evidence regarding the Aviles incident in determining Chaffold's guilt of the May 11 robbery of Castellon. Accordingly, we find that any conceivable error in failing to provide these instructions was harmless.

Finally, we turn to Chaffold's related claim of ineffective assistance of trial counsel. "A claim of ineffective assistance of counsel has two components: '"First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show

14

that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." [Citation.] [¶] To establish ineffectiveness, a "defendant must show that counsel's representation fell below an objective standard of reasonableness." [Citation.] To establish prejudice he "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." [Citation.]' (*Williams v. Taylor* (2000) 529 U.S. 362, 390–391, citing *Strickland v. Washington* (1984) 466 U.S. 668, 694; *In re Jones* (1996) 13 Cal.4th 552, 561.)" (*In re Vargas* (2000) 83 Cal.App.4th 1125, 1132–1133.) "Our review of an attorney's performance is a deferential one. For example, '"strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable. . . ."' [Citation.]' (*In re Cudjo* (1999) 20 Cal.4th 673, 692.)" (*Id.* at p. 1133.)

Chaffold contends his attorney was constitutionally ineffective for failing to request that the omitted instructions be given. Even assuming for the sake of argument that counsel should have requested those instructions, their absence was harmless. We therefore reject Chaffold's claim of ineffective assistance of counsel.

# DISPOSITION

As to Chaffold, the judgment is affirmed.  As to Summerville, the sentences on counts 7 and 8 are stayed pursuant to section 654.  A corrected abstract of judgment is to be prepared, which should reflect a 15-year minimum parole eligibility on count 4 (§ 186.22, subd. (b)(5)), but no gang enhancement on counts 4 or 5.  The clerk is directed to transmit a copy of the corrected abstract to the Department of Corrections and Rehabilitation.  The judgment, as modified, is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


EPSTEIN, P. J.

We concur:


WILLHITE, J.


MANELLA, J.

16